[Cite as *State v. Palmer*, 2022-Ohio-2643.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JEFFREY PALMER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 108**

---

Motion to Reopen

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Denied

---

*Atty. Paul J. Gains,* Mahoning Prosecutor, *Atty. Ralph M. Rivera,* Assistant Chief, Criminal Division, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503 for Plaintiff-Appellee and

Jeffrey Palmer, N.C.C.C. Cr-A-30, P.O. Box 1812, Marion, Ohio 43301, Pro Se, Defendant-Appellant.

Dated: July 18, 2022

**PER CURIAM.**

{¶1}     Defendant-Appellant, Jeffrey Palmer, has filed an application to reopen his direct appeal from his conviction on 12 counts of rape and one count of gross sexual imposition (GSI) of a minor under the age of 13. Appellant was sentenced to a total of 40 years to life in prison. *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-81. We denied appellant's assignments of error on direct appeal and affirmed his conviction and sentence on September 29, 2021. On December 28, 2021, the Ohio Supreme Court declined to accept appellant's appeal for review. *State v. Palmer*, 165 Ohio St.3d 1495, 178 N.E.3d 534 2021-Ohio-4515. Appellant filed the instant App.R. 26(B) application to reopen on December 28, 2021. For the following reasons, the application is denied.

{¶2}     An application to reopen an appeal must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B). Our judgment in this case was filed on September 29, 2021. Appellant filed this application on December 28, 2021. Thus, it was timely filed.

{¶3}     When considering an application for reopening pursuant to App.R. 26(B), we must first determine, based upon appellant's application, affidavits, and portions of the record before us, whether appellant has set forth a colorable claim of ineffective assistance of appellate counsel. See e.g. *State v. Milburn*, 10th Dist. No. 89AP-655, 1993 WL 339900 (Aug. 24, 1993); *State v. Burge*, 88 Ohio App.3d 91, 623 N.E.2d 146 (10th Dist.1993). The appropriate standard to assess whether Appellant has raised a "genuine issue" as to the ineffectiveness of appellate counsel in his request to reopen under App.R. 26(B)(5)  was set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998). In order to show the ineffective assistance of appellate counsel, appellant must prove that his appellate counsel deficiently performed by failing to raise the issues he now presents and that he was prejudiced because there was a reasonable probability of success had he presented those claims on appeal. *State v. Goff*, 98 Ohio St.3d 327, 2003-Ohio-1017, 784 N.E.2d 700.

Case No. 19 MA 108

**{¶4}** On direct appeal, appellant, through counsel, raised nine assignments of error. Those assignments of error concerned violation of his constitutional rights due to: identical counts charged in the same indictment; failing to instruct the jury on the lesser offense of GSI; insufficient evidence of oral rape; allowing the introduction of impermissible "other act" evidence; ineffectiveness of trial counsel for failing to be prepared for trial, not filing a motion to suppress, not withdrawing from the case, and not objecting to references to the minor (AB) in this case as "victim;" allowing the State to impermissibly bolster AB's testimony by using "expert" medical testimony; failing to record sidebars; and cumulative errors.

**{¶5}** In the instant Rule 26(B) application, appellant asserts that his appellate counsel was ineffective by failing to raise a number of additional issues. He asserts ten arguments that he refers to as assignments of error. Appellant first argues:

**APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ARGUE THAT TRIAL COUNSEL FAILED TO OBJECT TO THE ADMISSION AND ELICITING OF HEARSAY, AND TESTIMONIAL STATEMENTS, IN VIOLATION OF PALMER'S 5TH, 6TH, AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ART. 1, SECTION 10 OF THE OHIO CONSTITUTION.**

**{¶6}** Appellant claims that appellate counsel should have raised his trial counsel's failure to object to a number of statements made by AB, her mother TB (TB), Detective Sweeney, and Officer Hillman. He contends that these statements violated his Confrontation Clause rights and constituted inadmissible hearsay.

**{¶7}** We start by evaluating whether the statements violated appellant's Confrontation Clause rights. The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness, unless that witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *State v. Grabe*, 7th Dist. Mahoning No. 16 MA 0061, 2017-Ohio-1017, ¶ 20, citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**{¶8}** Here, AB testified at trial and was subject to complete cross-examination. (Tr. at 171-209). "The Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *State v. Culler*, 7th Dist. Columbiana No. 20 CO 0030, 2021-Ohio-4642, ¶ 37, citing *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930 (1970).

**{¶9}** Since there is no Confrontation Clause violation, trial counsel did not deficiently perform by failing to object to or otherwise raise this issue, and appellate counsel was therefore not ineffective for failing to raise trial counsel's ineffectiveness on this issue.

**{¶10}** Appellant also contends that AB's statements to TB, Detective Sweeney and Officer Hillman constituted inadmissible hearsay, trial counsel was ineffective for failing to raise this issue, and the trial court abused its discretion by admitting these statements. He first asserts that AB's statements were not excited utterances under Evid. R. 803 because the statements were made in 2018 about conduct that allegedly occurred in 2015 and 2016. He quotes *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993) (quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955)) concerning a four-part test to determine that an out-of-court statement is an excited utterance under the hearsay exception.

**{¶11}** Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides that "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

**{¶12}** Evid.R. 803 identifies exceptions to the hearsay rule where the declarant's availability is immaterial. One such exception includes Evid. R. 803(2): "Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Statements made under this exception are considered more truthful because the "declarant is under such state of emotional shock that his reflective processes have been stilled. Therefore, statements

made under these circumstances are not likely to be fabricated. McCormick § 297 (2d ed. 1972)." 1980 Staff Notes to Evid. R. 803(2).

{¶13} In order for an excited utterance to be admissible, four factors must be satisfied: (1) the event must be startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while the declarant was still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. *State v. Taylor,* 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316 (1993). In determining if a statement is an excited utterance, "[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *State v. Humphries*, 79 Ohio App.3d 589, 598, 607 N.E.2d 921 (1992).

{¶14} Appellant correctly points out that AB did not disclose sexual abuse until nearly two years after it occurred and appellant had left the home. (Tr. at 146-147). When asked at trial why she waited to disclose the abuse, AB testified that appellant threatened that he would hurt her mother if she told. (Tr. at 188). She stated that she was afraid of appellant and he was serious when he told her she would not see her mother. (Tr. at 188). She stated that appellant was older and bigger than her, and she knew that appellant kept a BB gun in his car. (Tr. at 188-189). She stated that she was afraid that appellant would come back when he left. (Tr. at 196).

{¶15} TB testified as to the circumstances surrounding AB's disclosure of the sexual abuse to her and AB's demeanor at that time. (Tr. at 146-147). She testified that AB came into the room while TB was talking to family and AB told TB that she had something to tell her about appellant and TB took AB into another room:

> A [TB]: and told me - - she was on the brink of crying, and she came and told me she wanted to tell me something. So I asked her what it was. And she told me that it was about Israel. So I said, well what is it? We had company around at the time, so I pulled her upstairs and asked her. And she told me - - she told me that's when he touched her. And I asked her how long was he doing it for? She told me the whole time he was in our apartment when we stayed in Boardman.

Case No. 19 MA 108

Q [prosecution]: What was [AB] like when she's telling you these things?

A: She was crying. She was looking like she was scared, like her whole - - she had an expression on her face like she was just like - - it was like she didn't want to tell me, but it's like she told me because she said she got tired of having nightmares of waking up and I wasn't there.

Q: [TB], what do you do as soon as [minor] tells you this?

A: I tell her get dressed and I'll take her to the emergency room.

(Tr. at 147-148).

{¶16} The period of time that AB waited to disclose is concerning. However, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *Taylor*, 66 Ohio St.3d at 303. Further, the courts have liberally applied the excited utterance rule to statements by children concerning sexual abuse because "'children are likely to remain in a state of nervous excitement longer than would an adult' " and young children possess "'limited reflective powers.' " *Id.*, quoting *Taylor* at 304, 612 N.E.2d 316. This liberality is necessary due to "the age of the child, the shocking nature of the act, and the surprising nature of the assault." *In re S.W.H.*, 2d Dist. Greene No. 44918, 2016-Ohio-841, ¶ 22, quoting *State v. Boston*, 46 Ohio St.3d 108, 118, 545 N.E.2d 1220 (1989). The Ohio Supreme Court has held that in order for a statement to qualify as an excited utterance, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Id.*

{¶17} "'A reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances.' " *State v. Robinson*, 12th Dist. No. CA2015-01-013, 48 N.E.3d 109, 2015-Ohio-4533, ¶ 29, quoting *State v. Ashcraft*, 12th Dist. No. CA97-11-217 (Sept. 28, 1998), citing *State v. Wagner*, 30 Ohio App.3d 261, 263, 508 N.E.2d 164 (8th Dist.1986). "[W]hen the crime is rape, determining whether the victim is in an excited state

is a factual question that is left to the trial court's discretion." *Ashcraft,* citing *State v. Smith*, 34 Ohio App.3d 180, 190, 517 N.E.2d 933 (5th Dist.1986).

**{¶18}** Here, AB was ten years old when the sexual abuse began and she was twelve years old when she disclosed the abuse to TB. (Tr. at 172,175). TB testified that AB approached her and was "on the brink of crying," "crying," and "scared," immediately before she disclosed the abuse to TB. (Tr. at 147). AB testified that she waited to disclose because appellant had threatened her about her mom, she was afraid of him, and she was afraid that he would return. She also testified that she had a nightmare the night before about TB not "coming back" and she disclosed the abuse to TB when she heard her mother talking about appellant. (Tr. at 188, 197). Based upon AB's young age, her reason for not disclosing earlier and the circumstances surrounding the time of disclosure, we find that AB's statements to TB were excited utterances. Accordingly, appellant's assertion of ineffective appellate counsel is without merit because trial counsel was not ineffective for failing to raise this as an issue at trial.

**{¶19}** Since AB's disclosure was an excited utterance, appellant's assertion that TB's testimony contained repeated hearsay from AB also fails. Consequently, trial counsel was not ineffective for failing to raise this issue and appellate counsel was therefore not ineffective for failing to raise trial counsel's ineffectiveness as to this issue.

**{¶20}** Even if TB's testimony contained inadmissible hearsay, its admission was harmless error. TB's testimony was part of the timeline of the events concerning the sexual abuse, as she was the first to testify, and she explained when appellant moved in, when she discovered the abuse, and how AB's behavior had changed after appellant moved in with them. *See State v. Gutierrez,* 3rd Dist. Hancock No. 5-10-14, 2011-Ohio-3126, §49 (admission of mother's testimony concerning her child's disclosure of sexual abuse not error as purpose was to explain timeline and child's behavior before and after abuse; even if error, harmless error because child testified as to abuse). Thus, TB's testimony was presented more for background or a timeline as opposed to the "truth of the matter" because AB testified right after TB and she related firsthand the sexual abuse that she suffered.

**{¶21}** Moreover, AB's testimony as to the sexual abuse rendered any admission of TB's testimony harmless because it was essentially cumulative. *Id.* at §50 ("[w]here a

declarant is examined on the same matters as contained in an impermissible hearsay statement and where the testimony is essentially cumulative, the admission of any such hearsay statement is harmless") (citing *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515 N.E.2d 963 12th Dist. Warren 1986); *see also State v. Noles*, 6th Dist. Lucas No. 2013-Ohio-4088(relying on *Gutierrez* to find the same concerning nine-year-old victim's disclosure to grandmother of sexual abuse that occurred when she was five years old). As in *Gutierrez*, this Court does not find that in the present case that, but for the admission of TB's testimony regarding AB's disclosure, there was a reasonable probability that the outcome of trial would have been different. AB testified herself and was subject to cross-examination. Consequently, even if trial counsel deficiently performed by not raising this issue, no prejudice resulted. Accordingly, appellate counsel was not ineffective by failing to raise on appeal the ineffectiveness of trial counsel as to this issue.

**{¶22}** Appellant also challenges the admission of the testimony of Detective Sweeney and Officer Hillman. Detective Sweeney testified that he spoke to TB after a social worker from Akron Children's Hospital called to report that AB and TB were there and had reported that AB had been raped. (Tr. at 215). He stated that TB was "emotional" and "upset," as she had just learned that about the rape prior to coming to the emergency room. (Tr. at 215). Sweeney was asked about a statement that TB made to him concerning a disclosure by AB. (Tr. at 215). He responded that TB had "advised that her daughter had been raped by her former live-in boyfriend." (Tr. at 215). Detective Sweeney continued testifying that he also spoke to AB, who was very emotional, and "she disclosed that she had been raped." (Tr. at 215). He thereafter was asked if he had a suspect in mind after speaking to TB and AB and he said he did and it was "Mr. Palmer," based upon the information provided to him by AB and TB. (Tr. at 215).

**{¶23}** We find that TB's statements to Detective Sweeney were excited utterances and therefore exceptions to the hearsay rule. She made those statements at the emergency room immediately after she had just learned that AB had been sexually abused. Sweeney described TB as visibly upset and "emotional." (Tr. at 215).

**{¶24}** Appellant also asserts trial counsel ineffectiveness for failing to object when Detective Sweeney was asked if he had a suspect in mind and he answered that it was appellant. (Tr. at 216). Appellant further alleges error in failing to object to Officer

Hillman's testimony as to his initial investigation, his testimony that the nature of the allegations were that TB's former boyfriend raped AB, and the only suspect was appellant. (Tr. at 314-316).

**{¶25}** The testimony of both Detective Sweeney and Officer Hillman was offered to show the beginning and chronology of the police investigation. "Where out-of-court statements were offered to explain a police officer's conduct while investigating a crime, rather than to prove the truth of the matter asserted therein, such statements were not hearsay." *State v. Fowler*, 10th Dist. Franklin No. 15AP-1111, 2017-Ohio-438, ¶ 30, citing *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987), citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

**{¶26}** Further, even if any of this testimony was hearsay, appellant's assertion nevertheless fails because AB and TB were the sources of Sweeney and Hillman's testimony that appellant was a suspect and AB and TB both testified and were subjected to cross-examination. Officer Hillman also testified that he interviewed a neighbor living next to the family when appellant lived with them and she testified at trial as well. Moreover, Officer Hillman had interviewed appellant and testified about that interview as well. Thus, appellant's trial counsel had the opportunity to cross-examine and did cross-examine AB, TB, and the neighbor at trial. "Where a declarant is examined on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless." *Fowler* at ¶ 30, quoting *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515 N.E.2d 963 (1986).

**{¶27}** Accordingly, appellant's first argument lacks merit.

**{¶28}** In the second argument of his Rule 26(B) application, appellant asserts:

> **Petitioner was denied the effective assistance of appellate counsel, a violation of due process of the 6th and 14th Amendments to the U.S. Constitution and section 16 Art. 1 of the Ohio Constitution, when counsel failed to raise on appeal trial counsels[sic] failures to object to prosecutorial misconduct and trial courts[sic] abuse of discretion in admitting inadmissible testimony.**

<u>Case No. 19 MA 108</u>

**{¶29}** Appellant contends that the prosecution committed misconduct and his counsel failed to raise this misconduct when the prosecution used Janet Gorsuch, Nurse Practitioner (NP) at ACH in the Child Advocacy Center (CAC), to give an opinion on whether AB was sexually abused and whether AB was believable. However, appellant makes no further mention of prosecutorial misconduct in this assignment of error and makes essentially the same arguments that he presented on direct appeal.

**{¶30}** We addressed the issue of NP Gorsuch's testimony in our Opinion on appellant's direct appeal and we overruled his sixth assignment of error alleging that the State improperly used NP Gorsuch's "diagnosis" of "concerning for sexual abuse" to bolster AB's allegations. Consequently, appellant's trial counsel was not ineffective in failing to raise this issue and appellate counsel was not ineffective for failing to raise trial counsel's failure to raise this issue.

**{¶31}** Accordingly, appellant's second argument lacks merit.

**{¶32}** In the third argument of his Rule 26(B) application, appellant asserts:

> **Palmer argues that it was also ineffective assistance of appellate counsel not to argue on appeal that trial counsel failed to object to the state's misconduct in closing argument when she stated "And everybody is in some big conspiracy to, again, as he put it, railroad him, just like Gorsuch lied. The police lied. The prosecutor's office obviously bought it because we're here prosecuting him." (Trial Tr. 450).**

*{¶33}* In support of this assertion, appellant quotes *Washington v. Hofbauer*, 228 F.3d 689 (2000), as stating that "It is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prosecuted or has been indicted. It is equally improper to imply to a jury that an underlying factual predicate of a crime must be true due to the fact of indictment or prosecution."

**{¶34}** The part of the prosecution's closing that appellant refers to stated completely that:

> And everybody is in some big conspiracy to, again, as he put it, railroad him, just like what happened to him on his prior convictions. [TB] lied. Monissa lied. Jan Gorsuch lied. The police lied. The prosecutor's office obviously bought it because we're here prosecuting him.

Tr. at 450.

**{¶35}** When reviewing a claim that the prosecution committed misconduct in closing argument, this Court evaluates whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The prosecution is afforded wide latitude in summation. *Id.* The challenged statements are not viewed in isolation but are read in context of the entire closing argument and the entire case. *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001); *State v. Rahman*, 23 Ohio St.3d 146, 154, 492 N.E.2d 401 (1986) (also noting if the Court were to find "every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation").

**{¶36}** "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Lott,* 51 Ohio St.3d at 166, 555 N.E.2d 293, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Where there are improper remarks, "it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *State v. Smith*, 14 Ohio St.3d 13, 15, 470 N.E.2d 883 (1984).

**{¶37}** The comments by the prosecution in the federal case cited by appellant are not similar to those made by the prosecution at closing in the instant case. The Sixth Circuit in *Hofbauer* held that the prosecution's pervasive character attack on the defendant at closing was "plainly improper". In his initial summation, the prosecutor improperly implied that the jurors should consider Washington's unseemly character when rendering their verdict; in his rebuttal, he explicitly urged them to do so. Meanwhile, he attacked Washington as a "'self-serving, illogical selfish non-compassionate, no emotional interest in a family type of person,'" who acted irrational due to "drugs and

alcoholism and a general not caring about other people." *Id.* at 699-700. The Sixth Circuit found additional prosecutorial misconduct when the prosecution told the jury during closing that the victim must have presented her story regarding penetration to someone since the appellant was indicted and the victim's story to every witness never changed, where there was no evidence of this presented at trial. *Id.* The Court found that these statements were also improper because a prosecutor cannot suggest that a defendant is guilty just because he was indicted and the prosecution cannot bolster the victim's testimony based on facts not presented in evidence. *Id.* at 701-702.

**{¶38}** Contrarily in the instant case, the prosecution basically used the statements made by appellant, who testified on direct examination that the police questioned him about AB and he absolutely denied the allegations. (Tr. at 371). On cross-examination, appellant also stated that TB, AB, and the neighbor Monissa Redmond, were "definitely" lying when they said that he moved in with TB in 2015. (Tr. at 380). He further testified that he was never left alone with any of the children and TB told a "bold-faced lie" when she testified that he watched the children while she worked. (Tr. at 384-386). He testified that "pretty much" everything that TB and Monissa testified to were lies and AB was lying as well. (Tr. at 391-396). He testified that he was the only one telling the truth at trial. (Tr. at 400). In fact, the prosecution asked appellant on cross-examination:

> Just so I'm clear, this is a big conspiracy, the mom, [TB],
> Monissa, [AB], even the boyfriend, they're all working to conspire
> to get you, Jeffrey Palmer, get you in trouble? Just yes or no.

(Tr. at 404). Appellant replied, "It's definitely happening." (Tr. at 404). He also stated that "I'm clearly being lied on. And if you read all the statements, it speaks volumes." (Tr. at 407). Appellant stated that NP Gorsuch was "very biased" about whether AB was sexually abused because she was an advocate. (Tr. at 397). He further testified that he was not sure whether AB had fooled the police, social workers, and NP Gorsuch, but "I know she gave a story that I strong - - I have to strongly suggest, believe, that she didn't come up with herself." (Tr. at 399). Since the prosecution merely restated that which appellant stated at trial, there is no prosecutorial misconduct in these closing comments.

Case No. 19 MA 108

{¶39} Further, these comments were only a small part of the prosecution's closing statement and the entire case. The prosecution reviewed all of the testimony at closing, including that of AB, and referred to appellant's testimony as part of the overall summation. The trial court also informed the jury that the opening and closing statements and arguments are not evidence. (Tr. at 454).

{¶40} And finally, even if the few closing comments were improper, it is clear beyond a reasonable doubt that the jury would have found appellant guilty without them.

{¶41} Accordingly, appellant's third argument lacks merit.

{¶42} In the fourth argument of his Rule 26(B) application, appellant asserts:

**Appellate counsel should have raised on appeal that [h]is Constitutional 6th and 14th Amendments to due process and effective counsel were violated when trial counsel failed to request a mistrial after the [sic] judge at trial violated his right to the presumption o[sic] innocents[sic] by asking the jury the prejudicial question "were any of you formerly a juror in the same case or in a civil case brought against the defendant for the same act?" (Trial Tr., 22).**

{¶43} The trial court is granted wide discretion in conducting voir dire and determining the questions to be asked. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 44, quoting *State v. Lorraine*, 66 Ohio St.3d 414, 418, 613 N.E.2d 212 (1993), and *State v. Wilson*, 74 Ohio St.3d 381, 386, 659 N.E.2d 292 (1996)(quoting *Mu'Min v. Virginia*), 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). "'[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶44} Part of the guarantee of a defendant's right to an impartial jury under the Sixth Amendment is "an adequate voir dire to identify unqualified jurors." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio- 598, 1836 N.E.2d 1173, ¶ 56, quoting *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *State v. Wilson*, 74 Ohio St.3d at 386, 659 N.E.2d 292. "Without an adequate voir dire the trial judge's

responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Jackson* at ¶ 56, quoting *Rosales–Lopez v. United States* (1981), 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22. Thus, voir dire questions "must be sufficient to identify prospective jurors who hold views that would prevent or substantially impair them from performing the duties required of jurors." *Jackson* at ¶ 57, citing *Morgan* at 734–735.

**{¶45}** Appellant is correct that the trial court asked the prospective jurors in voir dire: "Were any of you formerly a juror in the same case or in a civil case brought against this defendant for the same act?" (Tr. at 22). They collectively responded, "No." (Tr. at 22). Appellant contends that the court's question implied to the jurors that he had committed the same crime against someone else and he had been civilly sued as well.

**{¶46}** A mistrial should be declared only "when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991)(citations omitted). A party challenging a jury panel "has the burden of showing that the jurors were either unlawfully empaneled or that the jurors cannot be fair and impartial." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 150.

**{¶47}** The trial court's voir dire question in the instant case was somewhat inartful. However, Crim. R. 24(C) identifies challenges for cause that may be made to potential juror qualifications. The challenges include that a potential juror: "was a member of the grand jury that found the indictment in the case" Crim. R. 24(C)(4); "served on a petit jury drawn in the same case against the same defendant" (Crim. R. 24(C)(4); "served as a juror in a civil case brought against the defendant for the same act" (Crim. R. 24(C)(5); or that the juror "has an action pending between him or her and the State of Ohio or the defendant." (Crim. R. 24(C)(6)). Further, R.C. 2313.17(B) sets forth challenges for cause to excuse a potential juror, and it identifies the following as challenges: "that the person has an interest in the cause;" (R.C. 2313.17(B)2)); "that the person has an action pending between the person and either party;" (R.C. 2313.17(B)(3)); or "that the person formerly was a juror in the same cause;" (R.C. 2313.17(B)(4)). Since Crim. R. 24 and R.C. 2313.17(B) identify the questions that the trial court asked of the jurors, the court did not err in asking them about whether they had been jurors in the same case or whether they had participated in a civil case with appellant.

Case No. 19 MA 108

{¶48}   Moreover, there is no indication of prejudice resulting from this questioning. The court informed the jury that they would be instructed on the law in this case by the court. (Tr. at 24). The court asked if any of them would be unable to accept the law as the court would be instructing and apply it to the facts of the case. (Tr. at 24). The prospective jurors collectively responded, "No." (Tr. at 24). The court also informed them before opening statements that it was their duty "to decide the case solely on the evidence which you see or hear in the case." (Tr. at 118). After closing arguments, the court presented the jury instructions, and informed the jury that appellant was presumed innocent unless guilt was established beyond a reasonable doubt by the prosecution as to each essential element of the offenses for which he was charged. (Tr. at 452-453). The court also defined the meaning of the evidence upon which the jury was to rely to determine appellant's guilt and informed them that the prosecution needed to prove each essential element of the crimes beyond a reasonable doubt in order to find appellant guilty. (Tr. at 457-458). The court then reviewed each essential element of the crimes brought against appellant. (Tr. at 458-467). The court informed the jurors that they were to "carefully weigh the evidence," "consider all the evidence, and make your findings with intelligence and impartiality, and without bias, sympathy, or prejudice, so that the state of Ohio and the defendant will feel that their case was fairly and impartially tried." (Tr. at 471).

{¶49}   Since the trial court did not err in its question to the jurors concerning their prior service on a jury, trial counsel was not ineffective for failing to object to this questioning, and appellate counsel was therefore not ineffective in failing to raise trial counsel's lack of objection or failure to move for a mistrial as to this issue.

{¶50}   Accordingly, appellant's fourth argument lacks merit.

{¶51}   In the fifth argument of his Rule 26(B) application, appellant asserts:

> **Palmer was also denied effective counsel, a violation of the 6th and 14th Amendments, when trial counsel failed to object to the states[sic] cross examination which compelled Palmer to testify to the veracity and credibility of the multiple witnesses against him.**

**{¶52}** Appellant contends that trial counsel also rendered ineffective assistance when he failed to object when the prosecution repeatedly asked him on cross-examination if the State's witnesses were lying. He cites to portions of the trial where the prosecution asked him if TB, AB, or Monissa were lying when they testified as to when he moved in with TB, if TB left him alone with the children, and if Monissa testified just to get appellant in trouble. (Tr. at 379, 380, 388, 389, 392, 394, 399, 400, 403-406, 450).

**{¶53}** We find no merit to appellant's assertion. In *State v. Romano*, 7th Dist. Mahoning No. 04-MA-148, 2005-Ohio-5480, ¶ 40, we held that "[t]he trial court may permit the prosecution, on cross-examination, to inquire whether another witness was lying." The defendant had asserted on appeal that the prosecution continuously asked him and other witnesses throughout the trial whether they believed that the State's witnesses were lying. *Id.* at ¶39. The defendant contended that by doing so, the prosecution had "invaded the province of the jury to determine truthfulness." *Id.* Citing cases from the Eleventh District and the Eighth District, we held that the defendant's assignment of error was without merit. *Id.* at ¶40, citing *State v. Garfield*, 34 Ohio App.3d 300, 303–304, 518 N.E.2d 568, (1986); *State v. Carter*, 8th Dist. Cuyahoga No. 84816, 2005–Ohio–2179, at ¶ 23. Since the prosecution did not commit error in asking appellant whether its witnesses were lying, trial counsel was not ineffective in failing to object and appellate counsel was not ineffective for failing to raise this issue on appeal.

**{¶54}** Accordingly, appellant's fifth argument lacks merit.

**{¶55}** In the sixth argument of his Rule 26(B) application, appellant asserts:

> **Palmer argues that his counsel intentionally prejudiced him by informing the jury pool, "Okay, you've been a corrections officer. You know - - I keep nothing back—You'll wonder why. He is in jail because this is a serious offense, and the bonds are high. And he could not make bond. That is the reason he's incarcerated. I don't want you to think any other reason. So when you see deputies walking with him, thats[sic] the reason. They have a duty to be with him. They have to be everywhere with him because technically he's a prisoner of the jail." (Trial Tr, 82-83)."**

**{¶56}** Appellant contends that his counsel's statements about him being in jail violated his right to an impartial jury trial and his presumption of innocence. He refers to cases holding that a defendant has a right to appear before a jury in civilian clothes and without restraints.

**{¶57}** Appellant is correct that the United States Supreme Court has held that a court should not compel a defendant to appear before a jury in prison clothing or in visible physical restraints. *See Estelle v. Williams*, 425 U.S. 501. 504-506, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Deck v. Missouri*, 544 U.S. 622, 632, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Relying on these United States Supreme Court's opinions, the Ohio Eighth District Court of Appeals, in *State v. Collins*, 8th Dist. Case No. 89808, 2008-Ohio-3016, ¶ 14-18, held that that comments by a trial court that a defendant was in jail violated the defendant's right to a fair and impartial trial. The trial court had informed the jury prior to voir dire that they would not see the defendant in the cafeteria during their break because he was incarcerated "for security purposes." *Id.* at ¶11. The defense objected to the comments at sidebar because the defendant was dressed in civilian clothing for trial so that the jury would not know that he was in jail*. Id.* The court did not dismiss the jury that was eventually chosen, but offered to make a curative instruction, but none was given. *Id.* at ¶17. The Eighth District held that the trial court abused its discretion by not granting a mistrial due to its comments, which violated the defendant's due process rights.

**{¶58}** In *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, the Eighth District distinguished its holding in *Collins*. Robinson argued on appeal that he was entitled to a mistrial under *Collins* because a teenage witness mentioned in his testimony that Robinson was in prison. The *Robinson* Court acknowledged that the trial court should have issued a curative instruction, but it found *Collins* factually distinguishable because it was a judge who made the comment in *Collins,* not a teenage witness making a fleeting non-responsive comment. *Id.* at ¶ 74. The court emphasized that the judge's position carried great weight and credibility in the jury's eyes. *Id.* at ¶ 74.

**{¶59}** In *State v. Graffius*, 7th Dist. Columbiana No. 18 CO 0008, 2019-Ohio-2714 ¶34, the State's witness testified during direct examination that she did not fear the defendant because she knew he was in jail. The defendant asserted on appeal that his trial counsel was ineffective for failing to object to the testimony that he was in jail. We

recognized that Ohio courts have held that verbal references to a defendant being in jail were improper and potentially prejudicial because they erode the presumption of innocence, like wearing jail clothing. *Id.* at ¶ 35, citing *State v. Stroermer*, 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-4522, ¶ 35, citing *State v. Watters*, 8th Dist. Cuyahoga No. 82451, 2004-Ohio-2405, ¶ 15-16. However, we also noted that Ohio courts held that a single isolated statement that a defendant is in jail was insufficient to demonstrate prejudice. *Graffius* at ¶ 36, citing *Stroermer* at ¶ 35, citing *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470 and *State v. Gaona*, 5th Dist. Licking No. 11 CA 61, 2012-Ohio-3622.

**{¶60}** We found no merit to the appellant's argument, holding that the reference to the defendant's incarceration was merely a response to the prosecution's question asking if the victim was fearful of the defendant and the statement was a single isolated reference. *Graffius* at ¶37. We found that when no reasonable possibility exists that unlawful testimony contributed to a conviction, the error is rendered harmless and will not be grounds to reverse. *Id.* at ¶36, citing *State v. Howard-Ross*, 7th Dist. Mahoning No. 13 MA 168, 2015-Ohio-4810, 44 N.E.3d 304, citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978). We explained that counsel's failure to object to the statement was trial strategy so that the jury's attention would not be drawn to the comment, since the comment was part of a very lengthy answer to the question. *Id.* at ¶38.

**{¶61}** Here, rather than trying to draw attention away from the deputies accompanying appellant at trial by minimizing the issue, defense counsel's strategy was to draw attention to the deputies and explain to the jury pool why they accompanied appellant. Defense counsel was speaking to a potential juror who indicated that he had been a corrections officer. (Tr. at 82). Defense counsel took the opportunity to explain at that time that:

> --you'll see deputies with Mr. Palmer. You'll wonder why. He is
> in jail because this is a serious offense, and the bonds are high.
> And he could not make bond. That is the reason he's
> incarcerated. I don't want you to think any other reason. So when

you see deputies walking with him, that's the reason. They have a duty to be with him. They have to be everywhere with him because technically he's a prisoner of the jail.

Tr. at 82-83). Since one of the jurors had been a corrections officer, defense counsel chose that moment to explain why deputies accompanied appellant in order to dispel any other reason for their accompaniment. We see no prejudice to doing so and in fact, defense counsel tried to preemptively dismiss the jury's thoughts as to why the deputies were with appellant, as they may have been thinking that he is dangerous or was guilty. Since defense counsel did not err or prejudice the defense by drawing attention to the reason why he had deputies with him, appellate counsel was not deficient on appeal for failing to raise trial counsel's ineffectiveness in failing to raise this issue.

{¶62}   Accordingly, appellant's sixth argument lacks merit.

{¶63}   In the seventh argument of his Rule 26(B) application, appellant asserts:

> **Palmer also raises the issue that appellate counsel failed to raise trial counsel's ineffective representation due to counsel's failure to object to prosecutorial misconduct in closing argument. In this instant the prosecution made the Golden Rule Argument to the jury which asked them to place themselves in the shoes of the alleged victim, "And this is a 13 year old girl in front of strangers, in front of the defendant, her rapist, talking about some of the most intimate and personal things that a person could talk about. Imagine if you were called to the stand to talk about even your last consensual sexual experience, how embarrassing that would be for us as adults. Now put it as a 13 year old girl who's been raped." (Trial Tr, 417).**

{¶64}   Appellant contends that his Sixth Amendment rights were violated when his counsel failed to object to part of the prosecution's closing argument which he asserts used the "golden rule argument" by asking the jury to put themselves in the shoes of the

Case No. 19 MA 108

victim. He cites to the Sixth Circuit Court of Appeals' holding in *Hodge v. Hurley*, 426 F.3d 358 (6th Cir. 2005), finding that trial counsel was ineffective for failing to object to a number of comments made by the prosecution in closing argument, which included suggesting "the jury to 'put [itself] in the place of someone that might run into [Hodge] at night.' " *Id.* at 384. The Sixth Circuit called this type of argument the "golden rule argument" and cited cases holding that such arguments are objectionable and impermissible. *Id.*

{¶65} The *Hodge* Court cited the Eighth District Court of Appeals' holding in *City of Cleveland v. Egeland,* 26 Ohio App.3d 83, 497 N.E.2d 1383, 1389 (8th Dist. 1986), that "the prosecutor cannot properly threaten the jury that an acquittal would jeopardize them personally. Such arguments ask the jurors to shed their objectivity and to assume the role of interested parties" (citations omitted); *cf. Boop v. Baltimore & Ohio RR. Co.,* 118 Ohio App. 171, 193 N.E.2d 714, 716 (3d Dist. 1963)("This type of argument, where the jurors are asked to put themselves in the place of plaintiff, is commonly known as the 'Golden Rule Argument' and, upon objection being made, is normally considered objectionable and incompetent for the reason that it constitutes an appeal to the jury to abandon their position of impartiality and to exercise their discretion in the guise of an interested party.").

{¶66} The prosecution's comment in the instant case does not fall under the golden rule. The prosecution did make the following statement during closing: "And this is a 13 year old girl in front of strangers, in front of the defendant, her rapist, talking about some of the most intimate and personal things that a person could talk about. Imagine if you were called to the stand to talk about even your last consensual sexual experience, how embarrassing that would be for us as adults. Now put it as a 13 year old girl who's been raped. She was reluctant to talk about some of these things." (Tr. at 417). The prosecution went on to remind the jury that AB did in fact tell them, "eventually," about what appellant did to her. (Tr. at 417). The prosecution did not use the statement to have the jury put themselves in AB's place for them to abandon their impartiality. Rather, the prosecution was explaining to the jury why AB was hesitant to divulge such private information.

{¶67} Accordingly, appellant's seventh argument lacks merit.

Case No. 19 MA 108

**{¶68}** In the eighth argument of his Rule 26(B) application, appellant asserts:

> **Petitioner was denied effective appelate[sic] counsel when counsel failed to raise the issue that trial counsel was ineffective for failing to object to prosecutorial misconduct, a violation of due process of the 6th and 14th Amendments to the U.S. Constitution and section 16 Art. 1 of the Ohio Constitution**.

**{¶69}** Appellant quotes *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442 (6th Dist.) to assert that the prosecution's statements in closing relied upon inadmissible hearsay from all of its witnesses to corroborate AB's out-of-court statements because they were just regurgitating what AB told them. He contends that this violates his right to counsel because counsel failed to object to this at closing.

**{¶70}** None of the statements upon which appellant relies for this assignment of error are hearsay. Appellant cites to the following part of the closing argument where the prosecution talks about appellant grooming AB. The prosecution states:

> Now, [AB] is 13. She doesn't know enough to say that the defendant groomed her. She doesn't know enough to make up a story where the abuse escalated from touching to penetration to vaginal sex. She wouldn't know that that's the pattern that many sexual assaults follow. However, we heard from Nurse Gorsuch exactly that. The testimony showed that the defendant groomed [AB].

(Tr. at 422).

**{¶71}** The prosecution merely summarized the testimony that NP Gorsuch gave on direct examination based upon her experience as a nurse practitioner who had extensive experience in child sexual abuse cases. (Tr. at 290-291). NP Gorsuch testified as to what grooming was and how parts of AB's disclosure to her fit into that category. (Tr. at 291). Further, AB testified to this same disclosure. (Tr. at 177-189).

Case No. 19 MA 108

**{¶72}** Appellant also quotes from the prosecution's closing argument that "[TB] lied. Monissa lied. Jan Gorsuch lied. The police lied. [AB] lied. The prosecutor's office obviously bought it because we're here prosecuting him." (Tr. at 450). Again, this is not hearsay as explained *infra*, since it was a summary of the cross-examination of appellant by the prosecution. Further, the prosecution pointed out earlier in closing argument that the testimony of Monissa Redmond was used to establish when appellant lived with TB and the changes she observed in AB's behavior. (Tr. at 412, 443). The prosecution also stated that TB's testimony was used to establish the date that appellant lived with her, where they lived, the changes she observed in AB's behavior, and the actions she took when AB told her what had happened. (Tr. at 412, 443). None of the testimony of these witnesses was used to establish the truth of any statements made by AB concerning sexual abuse by appellant.

**{¶73}** Appellant is correct that the prosecution also told the jury to "consider the testimony of [AB], consider all the other witnesses that corroborated her testimony. And at the end of the day, I'm confident that you will find this defendant guilty beyond a reasonable doubt of all 13 counts in the indictment." (Tr. at 426). However, the prosecution clarified the use of the testimony of other witnesses in closing by stating, "So why does the state bother to put up other witnesses at all? Because we want to give you more information. Think about all that you learned from those other witnesses. You learned about how the defendant even had an opportunity to have access to this little girl, that he's living in the home, that he's watching the kids." (Tr. at 442). Thus, the testimony of these witnesses was used for background, observations about AB's behavior changes, and procedure, and not for establishing the truthfulness of AB's statements of sexual abuse by appellant. Accordingly, trial counsel was not ineffective in failing to object to the closing argument and appellate counsel was not ineffective for failing to raise a lack of objection by trial counsel.

**{¶74}** Accordingly, appellant's eighth argument lacks merit.

**{¶75}** In the ninth argument of his Rule 26(B) application, appellant asserts:

> **Palmer also raises the issue that, without objection from**
> **trial counsel, nurse Janet Gorsuch was permitted to repeat**

**testimonial hearsay statements that were entirely for forensic purposes rather than for diagnosis or treatment**.

**{¶76}** Appellate counsel raised this issue on appeal in assignment of error number six. We addressed this assignment of error on direct appeal and found that it lacked merit. We need not address it again.

**{¶77}** In the tenth argument of his Rule 26(B) application, appellant asserts:

**Appellate counsel was ineffective for failing to argue the courts[sic] abuse of discretion violated his right to due process through the 6th and 14th Amendments by permitting the following. Q: "Were there changes in your sex life with the defendant?" [Zena: "Objection."] A. "Yes." [The Court: "Overruled."] A. "It was just different. Like he wasn't sexually into me like your boyfriend supposed to be. Like he wasn't the same like how you would be sexually." (Trial Tr, 145).**

**{¶78}** Appellant contends that his appellate counsel was ineffective for failing to argue that the trial court abused its discretion in allowing TB to testify as to how her sexual relationship with appellant had changed. He contends that this violated R.C. 2907.02(D) and R.C. 2945.59.

**{¶79}** Appellate counsel raised this issue in a somewhat different manner on direct appeal. It was presented in appellant's fourth assignment of error asserting a violation of appellant's due process rights when the State presented numerous "other acts" evidence, which included TB's testimony that her sexual relationship with appellant changed while he was living with her.

**{¶80}** We addressed the assignment of error in the context of Evid. R. 404(B) and ultimately held that  that even if this statement constituted "other act" evidence, and was  improperly admitted, the admission was harmless because the remaining evidence at trial established appellant's guilt.

{¶81}   Evid. R. 404(B) provides:

(B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶82}   R.C. 2907.02(D) provides in relevant part:

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶83}   R.C. 2945.59 provides in relevant part:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent

thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶84}** R.C. 2945.49 and Evid.R. 404(B) are in accord with one another and are to be read in conjunction with each other. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶17. However, they do differ in some respects, however. R.C. 2945.59 gives "the trial court discretion to admit evidence of any other acts of a defendant in cases where motive or intent, absence of mistake or accident, or scheme, plan, or system in doing an act is *material. Id.* at ¶17, citing *generally Black's Law Dictionary 1066* (9th Ed.2009) ("material" means "[h]aving some logical connection with the consequential facts")(emphasis added).

**{¶85}** The Ohio Supreme Court has held that "the admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, [therefore] an appellate court should scrutinize the [trial court's] finding under a de novo standard" of review. *Id.*, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events,* Section 4.10 (2d Ed.2019).

**{¶86}** However, the trial court "has discretion whether to allow other-acts evidence that is admissible for a permissible purpose." *Id.*, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. "It is well established that a trial court's decision to admit evidence is an evidentiary determination within the broad discretion of the trial court and subject to review on an abuse-of-discretion standard." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19.

**{¶87}** Our opinion on direct appeal as to harmless error applies here as well. Even if the trial court erred in admitting TB's statement because it was impermissible other act evidence, this statement did not contribute to appellant's conviction and excising this statement does not otherwise impact appellant's guilt. "[A] judgment of conviction should not be reversed because of 'the admission * * * of any evidence offered against * * * the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.' " *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27, citing *State v. Crawford*, 32 Ohio St.2d 254, 255, 291 N.E.2d 450

Case No. 19 MA 108

(1972), quoting R.C. 2945.83(C). "In making these determinations, an appellate court 'must excise the improper evidence from the record and then look to the remaining evidence' for either overwhelming evidence of guilt or some other indicia that the error did not contribute to the accused's conviction." *State v. Lavette*, 8th Dist. Cuyahoga No. 106169, 2019-Ohio-145, ¶ 47, citing *Morris,* 141 Ohio St.3d 399 at ¶ 29.

**{¶88}** Accordingly, appellant's tenth argument lacks merit.

**{¶89}** For the above reasons, this Court denies appellant's Rule 26(B) application for reopening.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**

Case No. 19 MA 108