[Cite as *State v. Fox*, 2023-Ohio-4026.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL K. FOX,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 NO 0503**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 222-2067

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordan C. Croucher,* Noble County Prosecutor, for Plaintiff-Appellee and

*Atty. Alison Roth,* Assistant State Public Defender, Office of the Ohio Public Defender, for Defendant-Appellant.

Dated: November 6, 2023

**D'APOLITO, P.J.**

{¶1}    Appellant, Michael K. Fox, appeals from the December 12, 2022 judgment of the Noble County Court of Common Pleas convicting and consecutively sentencing him to five years for felonious assault and ten years for aggravated arson for a total, indefinite prison term of 15 years (minimum) to 20 years (maximum) following a trial by jury.[1]  On appeal, Appellant asserts his right to a fair and impartial trial was violated, alleges he was not properly *Mirandized*, and claims he was denied his constitutional right to the effective assistance of trial counsel.[2]  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    On August 8, 2022, Appellant was indicted by the Noble County Grand Jury on three counts: count one, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1) and (D)(1)(a); count two, kidnapping, a felony of the first degree in violation of R.C. 2905.01(B)(2) and (C)(1); and count three, aggravated arson, a felony of the first degree in violation of R.C. 2909.02(A)(1) and (B)(2).  Appellant was appointed counsel and pled not guilty at his arraignment.

{¶3}    A trial by jury commenced on November 2, 2022.[3]

{¶4}    Appellee, the State of Ohio, presented seven witnesses: (1) Sherri Moore, a caseworker with Noble County Department of Job and Family Services; (2) Deputy Cory Baker, with the Noble County Sheriff's Department ("NCSD"); (3) Jane Walters, J.W.'s grandmother; (4) Renee Walters, Appellant's girlfriend and J.W.'s mother; (5) Dr. McPherson, a physician at Akron Children's Hospital; (6) Captain Brent McKee, investigation commander with NCSD; and (7) Kenneth Nathan Johns, III, who testified he is familiar with Appellant, Renee, and J.W. and denied any liability regarding this incident.

---

[1] Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the "Reagan Tokes Law," significantly altered the sentencing structure for many of Ohio's most serious felonies by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after March 22, 2019.

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[3] The parties agreed to the following two stipulations: (1) The victim, J.W., (d.o.b. 5/18/2021), is a minor child; and (2) Dr. Paul McPherson is an expert in the field of child abuse.  *See* (11/4/2022 Agreed Stipulations).

{¶5} On July 8, 2022, NCSD received a 911 call from an Out Post Road residence requesting emergency medical assistance regarding a baby, later identified as 13-month-old J.W.[4] (11/2/2022 Trial by Jury Tr., p. 244, 276). It was noted J.W. suffered severe burns to his chest and leg initially believed to be caused from hot chicken strips. (*Id.* at p. 274). J.W. was transported to the emergency room at Marietta Memorial Hospital. (*Id.* at p. 276). At the hospital, it was discovered J.W. also suffered burns to his stomach and scrotum. (*Id.* at p. 278). The hospital contacted NCSD revealing J.W.'s burns were neither accidental nor self-inflicted and child abuse was suspected. (*Id.*) J.W. was transferred to Akron Children's Hospital Burn Unit for further treatment. (*Id.* at p. 280). An investigation into the source of J.W.'s injuries began.

{¶6} The investigation revealed J.W.'s mother, Renee, and his grandmother, Jane, were home with J.W. and Appellant. (*Id.* at p. 239, 269). Appellant and Renee were boyfriend and girlfriend. (*Id.* at p. 270). Renee had trusted Appellant with her son. (*Id.* at p. 279). J.W. had taken a nap earlier in the day and was awake in a clean diaper and onesie. (*Id.* at p. 271). The plumbing was not working at the trailer where they lived so Renee and Jane went to a neighboring trailer to take showers. (*Id.* at p. 272). J.W. was left home alone with Appellant. (*Id.*) Renee received a phone call from Appellant telling her to come home as quickly as possible because J.W. had been burned. (*Id.* at p. 274). Appellant claimed J.W. had gotten out of his highchair and burned himself by accidently sitting on a hot plate of chicken strips. (*Id.*)

{¶7} Renee and Jane immediately returned home. (*Id.* at p. 275). They observed J.W. no longer wearing his onesie but rather just his diaper. (*Id.*) They saw serious burns on J.W.'s chest and leg. (*Id.*) J.W. began crying when he saw his mother. (*Id.*) Appellant had a first aid kit out and had been applying burn cream to J.W.'s injuries. (*Id.*) Renee and Jane called 911 for immediate medical assistance over Appellant's objection. (*Id.* at p. 275-276).

{¶8} An ambulance arrived and transported J.W. to Marietta Memorial Hospital. (*Id.* at p. 276). Upon examination, children's services and law enforcement were contacted for an investigation because J.W.'s wounds were not found to be consistent

---

[4] The call was placed by J.W.'s mother and grandmother.

Case No. 22 NO 0503

with Appellant's version of events.  Due to the severity of his injuries, J.W. was transported to Akron Children's Hospital Burn Unit.  (*Id.* at p. 276-280).

**{¶9}**  Caseworker Moore went to the hospital to assess the situation.  (*Id.* at p. 195).  She interviewed Renee and Appellant together and took pictures of J.W.'s burns.  (*Id.* at p. 199).  Deputy Baker also went to the hospital and spoke with Renee and Appellant separately.  (*Id.* at p. 221).  Deputy Baker was skeptical that a 13-month-old child could get out of a highchair on his own, but Renee thought it was possible.  (*Id.* at p. 223).

**{¶10}** Dr. McPherson, a child abuse specialist, testified to the characteristics and potential causes of J.W.'s burns.  (*Id.* at p. 377-378).  J.W.'s injuries were diagnosed as third-degree burns including contact burns, some of which included characteristics of directed flame burns, on approximately three percent of his body.  (*Id.* at p. 399-402).  The official diagnosis included a determination that J.W.'s burns were not self-inflicted and were not the result of an accident.  (*Id.* at p. 398).

**{¶11}** Renee and Appellant consented to a search of their residence.  (*Id.* at p. 225, 282).  Deputy Baker, Captain McKee, and Caseworker Moore were all present.  (*Id.* at p. 282).  They observed several butane lighters in the bedroom.  (*Id.* at p. 226).  Renee, Jane, and Appellant were asked to come to the police station for interviews.  (*Id.* at p. 427).  Renee's and Jane's interviews were recorded.  (*Id.* at p. 428); (Exhibit I).  However, due to an oversight, Appellant's interview was not recorded.  (11/2/2022 Trial by Jury Tr., p. 430-431).  Officers did not notice this until the interview had ended, at which time they activated a camera for a short video recapping the end of their interview with Appellant.  (*Id.*); (Exhibit F).  Appellant admitted to intentionally using hot chicken strips to inflict burns on J.W.  (11/2/2022 Trial by Jury Tr., p. 435); (Exhibit F).  Appellant was arrested that day.

**{¶12}** However, over two months later, on September 28, 2022, Appellant changed his story.  (*Id.* at p. 443); (Exhibit G).  Jail employees informed Captain McKee that Appellant wanted to speak to him.  (11/2/2022 Trial by Jury Tr., p. 443).  Appellant complained about the quality of the food in the jail.  Appellant also voluntarily claimed the home was invaded by three men and that Kenneth Nathan Johns III was the one responsible for burning J.W. with a torch lighter.  (*Id.* at p. 447); (Exhibit G).

**{¶13}** Appellant's story was inconsistent with the evidence and scene at the residence. Also, investigating further into Appellant's claim, it was determined that Johns had a well-documented alibi making it impossible for him to be at the residence on the day at issue. (11/2/2022 Trial by Jury Tr., p. 482-485). Specifically, Johns provided photographic evidence that he was in Cleveland at the time J.W. was injured. (*Id.*) Thus, Appellant was left as the prime individual with the access and ability to inflict burns on J.W. with hot chicken strips and butane lighters. Renee revealed she no longer trusts Appellant and believes he was responsible for injuring her son. (*Id.* at p. 364).

**{¶14}** At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 as to counts two (kidnapping) and three (aggravated arson). The trial court granted the motion as to count two.

**{¶15}** Appellant did not testify and presented no witnesses.

**{¶16}** The jury found Appellant guilty on counts one (felonious assault) and three (aggravated arson).

**{¶17}** On December 12, 2022, the trial court convicted and consecutively sentenced Appellant to five years on count one and ten years on count three for a total, indefinite prison term of 15 years (minimum) to 20 years (maximum). Appellant was granted 150 days of jail-time credit. The court further notified Appellant that he is subject to a mandatory minimum term of two years up to a maximum term of five years of post-release control. The court also advised Appellant of his duty to register as an Arson Offender.

**{¶18}** Appellant filed a timely appeal and raises two assignments of error.[5]

## ASSIGNMENT OF ERROR NO. 1

**FOX WAS UNDULY PREJUDICED WHEN THE JURY WAS REPEATEDLY MADE AWARE OF THE FACT THAT HE WAS IN JAIL AT THE TIME OF TRIAL AND SHOWN A VIDEO WHERE HE APPEARED IN JAIL CLOTHES, AND HE WAS DENIED EFFECTIVE ASSISTANCE OF**

---

[5] The State incorrectly asserts that Appellant raises four assignments of error. (5/24/2023 Appellee's Brief, p. 5). Rather, Appellant raises two assignments of error, each containing two issues. (4/3/2023 Appellant's Brief, p. i-ii); (6/2/2023 Appellant's Reply Brief, p. 1, fn. 1, p. 5).

**COUNSEL WHEN HIS ATTORNEY FAILED TO REQUEST A MISTRIAL OR, AT A MINIMUM, OBJECT OR FILE A MOTION IN LIMINE TO MINIMIZE THE PREJUDICE CAUSED BY THE JURY REPEATEDLY BEING REMINDED THAT FOX WAS IN JAIL.**

**{¶19}** Under his first assignment of error, Appellant raises two issues: (1) "When the jury is told that defendant is in jail five separate times throughout the course of the trial and shown video of the defendant in jail attire, is his right to a fair and impartial trial violated, due to the erosion of the presumption of innocence?"; and (2) "Is counsel ineffective for failing to request a mistrial or, at a minimum, object or file a motion in limine when the jury is repeatedly inundated with the knowledge that the defendant is incarcerated?" (4/3/2023 Appellant's Brief, p. i).

**{¶20}** Regarding his first issue, Appellant contends he was unduly prejudiced by references to the fact that he was held in jail at the time of trial. Specifically, Appellant asserts his alleged prejudice stems from the following: (1) statements made by a prospective juror during voir dire referencing her work in the county jail; (2) a statement by the victim's mother that Appellant was in jail on the day of the investigation; and (3) a statement by Captain McKee regarding how he came to speak with Appellant, including a videotaped conversation between the two.

**{¶21}** Appellant did not raise the foregoing claims of undue prejudice during trial via objection, therefore he waives all but plain error on appeal. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Tylke*, 7th Dist. Harrison No. 21 HA 0006, 2022-Ohio-2010, ¶ 42, citing *State v. Long*, 53 Ohio St.2d 91, paragraph three of the syllabus (1978).

**{¶22}** First, during voir dire, prospective juror Emily Dudley revealed she was a back-up nurse at the Noble County Jail. (11/2/2022 Trial by Jury Tr., p. 58-59). Dudley did not believe she had any knowledge of Appellant's case, had not made up her mind, and indicated she could just focus on what was said in the courtroom. (*Id.* at p. 59). Dudley recognized Appellant from jail, had no direct contact with him, and did not want a possible mistrial because of her. (*Id.*) Dudley was not selected to serve on the jury in Appellant's trial. Notably, Dudley was not stricken for cause and was not determined to

Case No. 22 NO 0503

be an inappropriate juror. We fail to find that any of Dudley's statements prejudiced Appellant by poisoning the jury pool.

**{¶23}** Second, Renee was asked where Appellant was when the home was being searched. (*Id.* at p. 350). Renee inadvertently stated Appellant was in jail in reference to his location in the hours following the search. (*Id.*) Renee then immediately corrected her statement on the record that Appellant was in fact home. (*Id.*) We fail to find that Renee's statement, which she immediately corrected, prejudiced Appellant. *See Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) ("Recognizing that jurors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance"); *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, ¶ 76 ("The fact that the jury knew that [the defendant] had been arrested for the crimes for which he was being tried is simply not comparable to a jury's seeing a defendant in shackles. Nothing in the record suggests that the trial's result was affected by the disclosure that police had arrested [the defendant] while investigating[.]")

**{¶24}** Third, Captain McKee stated Appellant requested to speak to him in jail on September 28, 2022 and a video was played at trial showing Appellant in jail clothing. (Exhibit G). Irrespective of Captain McKee's statement, the jury was already aware of Appellant's jail status by virtue of the video. We fail to find that Captain McKee's statement and/or video prejudiced Appellant. *See Williams, supra,* at ¶ 75 ("Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence"); *State v. Bankston*, 11th Dist. Ashtabula No. 2020-A-0005, 2021-Ohio-4332, ¶ 36, citing *State v. Cline*, 11th Dist. Trumbull No. 2007-T-0052, 2008-Ohio-1500, ¶ 39 (Holding that "playing two videos of interviews with a defendant in jail clothing was not reversible error" and "noting that the jurors had been advised the defendant was in [jail] when he gave the interviews and 'even if * * * it was error to admit such a video, the error would be harmless since the jurors were well aware of his [jail] status at the time of the interview.'")

**{¶25}** In the trial court's final jury instructions, the jury was reminded that Appellant is "presumed innocent until his guilt is established beyond a reasonable doubt"; Appellant "must be acquitted unless the State produces evidence which convinces [the jury] beyond a reasonable doubt of every essential element of the offenses as charged in the

indictment"; and that "[e]vidence is all the testimony received from the witnesses, the exhibits admitted during trial, facts agreed to by counsel, and any facts which the court requires [the jury] to accept as true." (11/2/2022 Trial by Jury Tr., p. 538-539). "The jury is presumed to have followed the court's instructions." *State v. Jones*, 91 Ohio St.3d 335, 344 (2001), citing *State v. Raglin*, 83 Ohio St.3d 253, 264 (1998).

**{¶26}** Appellant's claim that the presumption of innocence was eroded is premised on his belief that there were other potential suspects, i.e., Renee and Jane, and that he was the only one in jail. As addressed, Appellant posits that someone else could have caused J.W.'s burns. However, the record reveals the injuries occurred while J.W. was in the sole care of Appellant. Appellant first claimed the burns occurred due to an accident. Appellant then changed his story and admitted to intentionally using hot chicken strips to inflict burns on J.W. Appellant then changed his story again claiming the home was invaded and that Johns was responsible for burning J.W. with a torch lighter. Appellant's story was inconsistent with the evidence and scene at the residence. It was also determined Johns had a well-documented alibi making it impossible for him to be at the residence on the day at issue. Specifically, Johns provided photographic evidence that he was in Cleveland at the time J.W. was injured. Thus, Appellant was left as the prime individual with the access and ability to inflict burns on J.W. with hot chicken strips and butane lighters.

**{¶27}** We find no merit under Appellant's first issue as his claims regarding undue prejudice do not amount to plain error.

**{¶28}** Regarding his second issue, Appellant contends his trial counsel was ineffective in failing to move for a mistrial, failing to file a motion in limine relating to a statement he made to law enforcement in the September 28, 2022 recorded conversation, and failing to object to references regarding his incarceration status. Specifically, Appellant asserts the following: (1) that references to his incarceration status made by a prospective juror should have been objected to; (2) his trial counsel should have filed a motion in limine to restrict the video of Appellant in jail; and (3) his counsel should have moved for a mistrial based exclusively upon references to Appellant's incarceration status.

**{¶29}** "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052 (1984).

In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland* [*, supra*]. Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on

the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

* * *

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 20-23, 27.

When a claim for ineffective assistance of counsel is made based on failure to file an objection or a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success. If the objection or motion would not have been successful, then the appellant cannot prevail on the ineffective assistance of counsel claim. *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, ¶ 14 (4th Dist.).

*State v. Saffell*, 7th Dist. Jefferson No. 19 JE 0021, 2020-Ohio-7022, ¶ 51.

**{¶30}** "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988); *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995).

**{¶31}** First, prospective juror Dudley revealed during voir dire that she was a back-up nurse at the Noble County Jail but had no direct contact with Appellant. (11/2/2022 Trial by Jury Tr., p. 58-59). As addressed, Dudley was not selected to serve on the jury in Appellant's trial, was not stricken for cause, and was not determined to be an

Case No. 22 NO 0503

inappropriate juror.  As stated, we fail to find that any of Dudley's statements prejudiced Appellant by poisoning the jury pool.  In fact, the jurors were advised of the presumption of innocence and the record does not reveal they acted in a manner inconsistent with those instructions.

{¶32}  Second, similar to a trial counsel's failure to file a motion to suppress, the failure to file a motion in limine restricting the use of the video in this case would have been futile.  Appellant acknowledges the recorded conversation had probative value that would not have prevented the exclusion of the audio evidence contained therein.  (4/3/2023 Appellant's Brief, p. 18-19).  Appellant cannot demonstrate there exists a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt.  As stated, the evidence establishes, inter alia, the following: the existence of lighters in the home; the official diagnosis by Dr. McPherson that J.W.'s burns were not self-inflicted and were not the result of an accident; Appellant created a false story attempting to blame his actions on an innocent third party; and Appellant admitted guilt.

{¶33}  Third, Appellant asserts ineffective assistance because his counsel failed to move for a mistrial.  "A mistrial should be declared only 'when the ends of justice so require and a fair trial is no longer possible.'"  *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 108, 2022-Ohio-2643, ¶ 46, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).  "Voir dire decisions by counsel are subjective and prone to counsel strategy and generally should not be second-guessed."  *State v. Uncapher*, 7th Dist. Mahoning No. 20 MA 0017, 2022-Ohio-1449, ¶ 46, citing *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 237.  Here, Appellant's trial counsel made a tactical decision to let this jury decide the case, as submitted, and not take another chance before another jury.  It is worth noting again that Appellant's counsel moved for a Crim.R. 29 acquittal, which was granted as to count two (kidnapping).  The State aptly asserts the following:

> Contrary to Appellant's contention that his being in jail made him seem more guilty, Appellee would submit that it was Appellant's confession to burning a 13-month-old infant left in his care and his unwillingness to contact emergency medical personnel that made him seem more guilty.

(5/24/2023 Appellee's Brief, p. 23).

Case No. 22 NO 0503

{¶34} We find no merit under Appellant's second issue regarding ineffective assistance of counsel. Upon consideration, the record establishes trial counsel's representation was constitutionally effective and did not affect Appellant's rights. Counsel's performance was neither deficient nor prejudicial. Appellant fails to demonstrate ineffective assistance of counsel. *See Strickland, supra.*

{¶35} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**FOX'S FIFTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS NOT PROPERLY MIRANDIZED PRIOR TO HIS INTERROGATION ON SEPTEMBER 28, 2022, AND TRIAL COUNSEL WAS INEFFECTIVE FOR NOT [SIC] FOR THE CONTENTS OF THE INTERVIEW TO BE SUPPRESSED.**

{¶36} Under his second assignment of error, Appellant raises two issues: (1) "Does an officer violate Miranda v. Arizona when they fail to apprise a defendant of all their Miranda rights when the defendant is in jail but requested to speak with the officer?"; and (2) "Is a defendant denied effective assistance of trial counsel when the attorney fails to move for the suppression of inculpatory evidence discovered as a result of a constitutionally insufficient Miranda warning?" (4/3/2023 Appellant's Brief, p. ii).

{¶37} Regarding his first issue, Appellant claims his Fifth Amendment rights were violated by not being apprised of his *Miranda* rights before speaking with an officer at his request. Appellant, however, failed to raise this argument below.

{¶38} An argument is waived if it is brought for the first time on appeal. *See State v. Lynn*, 7th Dist. Belmont No. 11 BE 18, 2011-Ohio-6404, ¶ 9.

> *Miranda* errors must be raised at the appropriate time in the proceedings. We cannot rule on whether there was a *Miranda* violation [if an] Appellant did not address this issue at the proper time during the trial court proceedings.

\* \* \*

The sole remedy for a *Miranda* violation is the suppression of the evidence which was derived from the violation. *Bennett v. Passic* (C.A.10, 1976), 545 F.2d 1260, 1263; see *Miranda, supra,* 384 U.S. at 479. A criminal defendant is required to raise a *Miranda* violation in a pretrial motion to suppress. *State v. Cornely* (1978), 56 Ohio St.2d 1, 6. By failing to file a motion to suppress before trial, [an] appellant waive[s] any *Miranda* error relating to the failure to suppress his conversation with [an officer]. See *State v. Moody* (1978), 55 Ohio St.2d 64, 66; *State v. Sibert* (1994), 98 Ohio App.3d 412, 429.

*State v. Scott*, 7th Dist. Belmont No. 00 BA 40, 2001 WL 1667866, * 3 (Dec. 20, 2001).

**{¶39}** Notwithstanding waiver, the record reveals Appellant was not subject to a custodial interrogation at the time of the September 28, 2022 recorded conversation he had with Captain McKee. (Exhibit G). A *Miranda* warning is only required prior to a custodial interrogation. The United States Supreme Court in *Miranda* held, "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody[.]" *Miranda, supra,* at 444. "[I]imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Howes v. Fields*, 565 U.S. 499, 511 (2012).

**{¶40}** Again, Appellant admitted to intentionally using hot chicken strips to inflict burns on J.W. and he was arrested. (11/2/2022 Trial by Jury Tr., p. 435). However, Appellant later changed his story in jail. (*Id.* at p. 443); (Exhibit G). Jail employees informed Captain McKee that Appellant wanted to speak to him and an 18 minute conversation was conducted in the first available room. (11/2/2022 Trial by Jury Tr., p. 443); (Exhibit G). No *Miranda* warning was required. The voluntary conversation was not initiated by Captain McKee but rather by Appellant. *See Miranda, supra,* at 444; (Exhibit G). At no point was Appellant threatened, coerced, or physically restrained. (Exhibit G). Captain McKee confirmed with Appellant that he has counsel, was under no obligation to speak to him, and told Appellant "this is at your request." (*Id.*)

**{¶41}** Appellant noted it helps for him to talk and he first complained about the quality of the food in jail. (*Id.*) Appellant voluntarily apologized for previously lying and now said he did not harm J.W. (*Id.*) Appellant claimed the home was invaded and that

Johns was responsible for burning J.W. with a torch lighter. (11/2/2022 Trial by Jury Tr., p. 447); (Exhibit G). It was later determined that Johns, however, had a well-documented alibi making it impossible for him to be at the residence on the day at issue. (11/2/2022 Trial by Jury Tr., p. 482-485). Captain McKee did not want to get in depth with questioning before speaking to Appellant's counsel and doing further investigating into Appellant's claims. (Exhibit G). Upon the completion of the conversation, Appellant left the room and returned to his cell. (*Id.*)

**{¶42}** We find no merit under Appellant's first issue as his Fifth Amendment rights were not violated.

**{¶43}** Regarding his second issue, Appellant claims his trial counsel was ineffective in failing to file a motion to suppress his recorded statements discovered as a result of a constitutionally insufficient *Miranda* warning.

> Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). A defendant must prove there was a basis to suppress the evidence in question. *Brown,* 115 Ohio St.3d 55 at ¶ 65.

*State v. Smith*, 7th Dist. Belmont No. 19 BE 0013, 2020-Ohio-760, ¶ 43, quoting *State v. Albright*, 7th Dist. Mahoning No. 14 MA 0165, 2016-Ohio-7037, ¶ 58.

**{¶44}** "Generally, the decision not to file a motion to suppress does not constitute ineffective assistance of counsel 'when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant.'" *Smith, supra,* at ¶ 44, quoting *State v. Nields*, 93 Ohio St.3d 6, 34 (2001).

**{¶45}** As addressed, the record reveals Appellant was not subject to a custodial interrogation at the time of the recorded conversation between him and Captain McKee. No *Miranda* warning was required and, thus, Appellant's Fifth Amendment rights were not violated.

**{¶46}** The decision to not file a motion to suppress Appellant's recorded conversation with Captain McKee is neither ineffective assistance of counsel nor is it prejudicial to Appellant as Appellant notes the video has probative value and it would not

have been suppressed in its entirety. The playing of the video was part of trial strategy. *See Rivers, supra,* at ¶ 22 ("Even instances of debatable strategy very rarely constitute ineffective assistance of counsel.")

{¶47} Notwithstanding a motion to suppress, compelling evidence still exists in the record against Appellant: J.W. was awake in a clean diaper and onesie; Renee and Jane went to a neighboring trailer; J.W. was left home alone with Appellant; Appellant called Renee to come home as quickly as possible because J.W. had been burned; Appellant claimed J.W. got out of his highchair and burned himself by accidently sitting on a hot plate of chicken strips; Renee and Jane immediately returned home; they observed J.W. no longer wearing his onesie but rather just his diaper; they observed serious burns on J.W. which were not there before they left J.W. alone with Appellant; Renee and Jane called 911 over Appellant's objection; J.W. was transported via ambulance to Marietta Memorial Hospital; upon examination, children's services and law enforcement were contacted for an investigation because J.W.'s wounds were not found to be consistent with Appellant's version of events; due to the severity of his injuries, J.W. was transported to Akron Children's Hospital Burn Unit; an investigating officer, Deputy Baker, was skeptical that a 13-month-old child could get out of a highchair on his own; Dr. McPherson, a child abuse specialist, testified to the characteristics and potential causes of J.W.'s burns; J.W.'s injuries were diagnosed as third-degree burns including contact burns, some of which included characteristics of directed flame burns, on approximately three percent of his body; the official diagnosis included a determination that J.W.'s burns were not self-inflicted and were not the result of an accident; Renee and Appellant consented to a search of their residence; several butane lighters were found; Appellant later admitted at the police station to intentionally using hot chicken strips to inflict burns on J.W.; Appellant was arrested that day; however, over two months later, Appellant changed his story again; jail employees informed Captain McKee that Appellant wanted to speak to him; Appellant voluntarily claimed the home was invaded and that Johns was responsible for burning J.W. with a torch lighter; Appellant's story was inconsistent with the evidence and scene at the residence; also, investigating further into Appellant's claim, it was determined that Johns had a well-documented alibi making it impossible for him to be at the residence on the day at issue; specifically, Johns provided photographic evidence

that he was in Cleveland at the time J.W. was injured; thus, Appellant was left as the prime individual with the access and ability to inflict burns on J.W. with hot chicken strips and butane lighters; Renee revealed she no longer trusts Appellant and believes he was responsible for injuring her son.

**{¶48}** We find no merit under Appellant's second issue regarding ineffective assistance of counsel. Upon consideration, the record establishes trial counsel's representation was constitutionally effective and did not affect Appellant's rights. Counsel's performance was neither deficient nor prejudicial. Appellant fails to demonstrate ineffective assistance of counsel. *See Strickland, supra.*

**{¶49}** Appellant's second assignment of error is without merit.

## CONCLUSION

**{¶50}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The December 12, 2022 judgment of the Noble County Court of Common Pleas convicting and consecutively sentencing Appellant to five years for felonious assault and ten years for aggravated arson for a total, indefinite prison term of 15 years (minimum) to 20 years (maximum) following a trial by jury is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 22 NO 0503

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**