# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

NICOLE D. CARTER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0092**

---

Criminal Appeal from the
Campbell Municipal Court of Mahoning County, Ohio
Case No. CRB 2200291

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lamprini G. Matthews,* City of Campbell Law Director, for Plaintiff-Appellee and

*Atty. Anthony P.A. Rich*, for Defendant-Appellant.

Dated: May 31, 2024

**DICKEY, J.**

{¶1}   Appellant, Nicole D. Carter, appeals from the August 1, 2023 judgment of the Campbell Municipal Court convicting her for assault and sentencing her to jail following a jury trial.  On appeal, Appellant raises arguments involving sufficiency of the evidence, manifest weight, and ineffective assistance of counsel.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On August 11, 2022, Appellee, the State of Ohio, filed a criminal complaint against Appellant charging her on one count of assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A)(1).[1]  On September 23, 2022, Appellant, appearing pro se, pled not guilty and waived her right to a speedy trial.

{¶3}   A pre-trial was held on October 25, 2022.  Appellant requested additional time to retain an attorney.  The pre-trial was re-scheduled for November 29, 2022.  Appellant appeared with counsel, Attorney Desirae DiPiero.  After no resolution was reached, the matter was re-set for further pre-trial on January 6, 2023.  Attorney DiPiero was present and Appellant's appearance was excused.  After no resolution was reached, Appellant discharged the services of Attorney DiPiero.

{¶4}   On January 9, 2023, Appellant filed a pro se motion to dismiss the assault charge and requested a jury trial.  Following a February 7, 2023 hearing, the trial court denied Appellant's motion to dismiss.  A jury trial was scheduled for March 16, 2023.

{¶5}   On February 13, 2023, Attorney John Ams filed a notice of appearance as Appellant's counsel and requested to continue the jury trial.  Eight days later, Attorney Ams filed a motion to withdraw as Appellant's counsel which was granted by the trial court.

{¶6}   On March 6, 2023, Appellant filed a pro se motion to continue the jury trial.  The trial court granted Appellant's motion and re-scheduled the jury trial for July 19, 2023, providing her ample time to retain new counsel.  On March 17, 2023, Appellant filed a pro

---

[1] The complaint alleged that Appellant "'Did knowingly cause or attempt to cause physical harm to'" M.A.

se "Contest of Last Motion Denial" claiming the trial judge was biased towards her. The court denied her motion. On May 8, 2023, Attorney Aaron Meikle filed a notice of appearance as Appellant's new counsel.

{¶7} A jury trial was held on July 19, 2023. The State presented two witnesses: (1) M.A., the victim; and (2) Sergeant Timothy Rauschenbach, a detective/sergeant with the Campbell Police Department ("CPD").

{¶8} M.A. was employed by Republic Services, a local waste removal company contracted by the City of Campbell to remove residential trash. (7/19/2023 Jury Trial Tr., p. 67-70). M.A.'s duties as an operations supervisor were to act as a "troubleshooter," i.e., to address customer concerns and complaints regarding garbage removal. (*Id.* at p. 68). M.A. had been to Appellant's residence, 211 Hamrock Drive, several times prior to the August 3, 2022 date of the incident. (*Id.* at p. 70).

{¶9} Appellant had been placing construction debris, "unacceptable waste," for curbside pickup along with her standard residential garbage. (*Id.*); (State's Exhibits A-E). M.A. explained that Republic Services' contract with the City of Campbell is to remove standard residential garbage and that separate arrangements for removal of construction debris can be made. (*Id.* at p. 70-71). M.A. said this is for the safety of company employees removing garbage from the curbside. (*Id.* at p. 73).

{¶10} M.A. recalled being at Appellant's residence on other occasions. (*Id.* at p. 70-71). M.A. went to Appellant's home on March 21, 2022 because construction material and debris were placed at the curbside along with her residential garbage. (*Id.* at p. 71). M.A. did not have any interaction with Appellant at that time but did discuss the matter with the individual working on Appellant's home. (*Id.* at p. 72). As a courtesy, M.A. removed the construction materials himself. (*Id.* at p. 72-73). However, M.A. advised the contractor that this type of construction refuse should not be left with the usual residential curbside garbage. (*Id.* at p. 72).

{¶11} Soon thereafter, on March 30, 2022, M.A. was called to Appellant's residence again for the same issue. (*Id.* at p. 73). This time M.A. did interact with Appellant. (*Id.*) M.A. advised Appellant directly that construction materials are not to be left at the curbside for pickup with standard residential garbage. (*Id.* at p. 74). M.A. testified that Appellant became "belligerent" and made derogatory statements about

Republic Services and its employees. (*Id.* at p. 75-76). Again, as a courtesy, M.A. removed the construction materials himself. (*Id.* at p. 77). However, M.A. advised Appellant to abide by the company's policy regarding construction debris in the future. (*Id.* at p. 76).

**{¶12}** After being shown a video of his statement to the CPD by Appellant's attorney on cross-examination, it appears M.A. visited Appellant's home prior to March 2022. (*Id.* at p. 93-121). In the video, M.A. stated he went to Appellant's home in February 2022 for the same construction debris issue. (*Id.*) M.A. did not have contact with Appellant at that time and he removed the construction debris as a courtesy. (*Id.*)

**{¶13}** On the date at issue, August 3, 2022, M.A. received communication from the route driver that construction debris (this time a five-foot mirror) was placed for curbside pickup at Appellant's home. (*Id.* at p. 80); (State's Exhibit E). M.A. went to the residence and was confronted by Appellant in the driveway. (*Id.* at p. 80-82). M.A. said Appellant was using "very threatening" profanities against him and was escalating the situation unnecessarily. (*Id.* at p. 82). M.A. did not engage by using any similarly course language against Appellant. (*Id.* at p. 82-83).

**{¶14}** Seeking to diffuse the tension, M.A. retreated to his truck to call his boss about the situation. (*Id.* at p. 83-85). M.A. said the door of his truck was closed and the window was up. (*Id.* at p. 85-86). M.A. could hear that Appellant was also on the phone with Republic Services complaining about the matter. (*Id.* at p. 85).

**{¶15}** M.A. testified Appellant "opened up [his] door and punched [him] in the arm." (*Id.* at p. 86). M.A. stated he did not threaten Appellant, did not defend himself, had not invited the attack, and was not injured. (*Id.* at p. 88). After the strike, M.A. said Appellant took the mirror off the back of his truck and crashed it on the road, causing it to shatter into many pieces. (*Id.* at p. 89). M.A. got out, picked up the frame of the mirror, threw it in his truck, and drove away. (*Id.*) M.A. called the City of Campbell to advise them there was a "mess" of broken glass in the street. (*Id.*) M.A. also called the CPD to report the incident. (*Id.* at p. 92).

**{¶16}** At the CPD, M.A. gave an initial report to Sergeant Timothy Rauschenbach regarding the incident that happened at Appellant's residence. The report taken by Sergeant Rauschenbach was a summary of the incident. (*Id.* at p. 127-128). Sergeant

Rauschenbach testified he attempted to contact Appellant but was unsuccessful. (*Id.* at p. 130). The matter was referred to the CPD's detective for further investigation which lead to the filing of the criminal complaint against Appellant. (*Id.* at p. 131).

**{¶17}** At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court. The defense rested without presenting evidence.

**{¶18}** The jury found Appellant guilty of assault as charged.

**{¶19}** On August 1, 2023, following a sentencing hearing, the trial court sentenced Appellant to 180 days in jail, 159 days suspended, 21 days imposed. Appellant was ordered to pay a $400 fine plus costs. The court placed Appellant on one year reporting probation with the condition that she undergo a psychological evaluation and follow through with all recommended treatment. Appellant was further ordered to have no contact with the victim or his employer.[2]

**{¶20}** Appellant filed a timely appeal and raises three assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 2

**THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.**

**{¶21}** In her first assignment of error, Appellant argues her conviction for assault is not supported by sufficient evidence. In her second assignment of error, Appellant contends her conviction for assault is against the manifest weight of the evidence. For ease of discussion, because these assignments are interrelated, we will consider them together.

---

[2] Appellant filed a motion to stay her sentence pending appeal which was granted by the trial court.

"When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

**{¶22}** "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

**{¶23}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

Case No. 23 MA 0092

**{¶24}** Appellant takes issue with the guilty finding for assault, a misdemeanor of the first degree in violation of R.C. 2903.13, which states in part:

(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.

* * *

(C)(1) Whoever violates this section is guilty of assault, and the court shall sentence the offender as provided in this division and divisions (C)(1), (2), (3), (4), (5), (6), (7), (8), (9), and (10) of this section. Except as otherwise provided in division (C)(2), (3), (4), (5), (6), (7), (8), or (9) of this section, assault is a misdemeanor of the first degree.

R.C. 2903.13(A)(C)(1).

**{¶25}** Appellant stresses she is not guilty of assault because M.A. suffered no injury. Appellant notes the trial court required a "physical harm" finding in its jury instructions: "Before you can find the defendant guilty of assault, you must find beyond a reasonable doubt that on or about the 3rd day of August, 2022, in the City of Campbell, Mahoning County, Ohio, the defendant knowingly caused physical harm to [M.A.]." (7/19/2023 Jury Trial Tr., p. 165-166); (9/20/2023 Appellant's Brief, p. 11). The court further instructed: "Physical harm to persons means any injury, illness, or other psychological impairment, regardless of its gravity or duration." (*Id.* at p. 166); (*Id.*) Appellant claims the State failed to present sufficient evidence to support her conviction as it relates to the element of "physical harm."

**{¶26}** The record is clear that Appellant struck M.A. Appellant's act of violence was done without any provocation from M.A. As stated, M.A. testified Appellant "opened up [his] door and punched [him] in the arm." (7/19/2023 Jury Trial Tr., p. 86). As contained in the trial court's jury instructions, R.C. 2901.01(A)(3) states: "'Physical harm to persons' means any injury, illness, or other physiological impairment, *regardless of its gravity or duration*." (Emphasis added). Thus, contrary to Appellant's position, whether M.A. sustained a lasting or discernable injury, or whether he sought or needed medical attention, by the statutory definition, is irrelevant here. In fact, the defining statute, R.C.

Case No. 23 MA 0092

2901.01(A)(3), specifically excludes a requirement as to the "gravity or duration" of any injury.

**{¶27}** Pursuant to *Jenks, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of assault were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

**{¶28}** Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of assault. *Thompkins, supra*, at 387.

**{¶29}** Appellant's first and second assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF [HER] RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**{¶30}** In her third assignment of error, Appellant asserts she was denied effective assistance from her trial counsel.

**{¶31}** "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052 (1984).

> In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland* [*, supra*]. Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

* * *

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 20-23, 27.

**{¶32}** Appellant takes issue with her counsel's jury selection strategy, specifically with respect to Juror 39, and alleges it amounts to ineffective assistance.

**{¶33}** This court has found that "[v]oir dire decisions by counsel are subjective and prone to counsel strategy and generally should not be second-guessed." *State v. Uncapher*, 7th Dist. Mahoning No. 20 MA 0017, 2022-Ohio-1449, ¶ 46, citing *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 237.

**{¶34}** The Supreme Court of Ohio has similarly stated:

We have consistently declined to "second-guess trial strategy decisions" or impose "hindsight views about how current counsel might have voir dired the jury differently." *State v. Mason* (1998), 82 Ohio St.3d 144, 157, 694 N.E.2d 932. See also *State v. Group,* 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 139; *State v. Murphy* (2001), 91 Ohio St.3d 516, 539, 747 N.E.2d 765; *Bradley,* 42 Ohio St.3d at 143–144, 538 N.E.2d 373.

"Few decisions at trial are as subjective or prone to individual attorney strategy as juror *voir dire,* where decisions are often made on the basis of intangible factors." *Miller v. Francis* (C.A.6, 2001), 269 F.3d 609, 620. "The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts. (* * *) (T)he selection process is more an art than a science, and more about people than about rules." *Romero v. Lynaugh* (C.A.5, 1989), 884 F.2d 871, 878. For these reasons, we have recognized that "counsel is in the best position to determine whether any potential juror should be questioned and to what extent." *Murphy,* 91 Ohio St.3d at 539, 747 N.E.2d 765; see also *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373.

*State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 63-64.

**{¶35}** Juror 39 was a victim of a crime but said he could be "fair and impartial" and "give both sides deference and listen to all the evidence" in Appellant's case. (7/19/2023

Jury Trial Tr., p. 43-44). Thereafter, outside the presence of the other jurors, Juror 39 told the court that his wife works for Republic Services and he met M.A. at a company Christmas party. (*Id.* at p. 64). Juror 39 said he "didn't know [M.A.] real well." (*Id.*) The following exchange continued:

[PROSECUTOR]: Was anything about that interaction, would it affect your ability to be a fair and impartial juror?

JUROR: I don't believe so.

[PROSECUTOR]: Do you believe that you can hear the evidence, both favorable and disfavorable to the State, and still render a fair and impartial verdict?

JUROR: I believe I can.

[PROSECUTOR]: And if necessary, even though you know him, could you find the defendant not guilty if you believe that the State had not met its burden of proof?

JUROR: Yes.

[PROSECUTOR]: And likewise, do you think that knowing this individual would cause you to automatically be in favor of the State's position in finding the defendant guilty?

JUROR: No.

[PROSECUTOR]: No further questions, Your Honor.

THE COURT: Okay. I'm satisfied that the juror's impartial. I think we should proceed. Counsel?

[TRIAL COUNSEL]: I believe - - I mean, he answered all the questions correctly, and those are all the correct questions that he asked. I think it boils down to whether or not you would be swayed one way or - - one way

or another for or even against [M.A.] because of your interaction. So, I mean - -

JUROR: No. I have no feelings towards the man one way or the other.

[TRIAL COUNSEL]: Okay. I understand that. So, I mean, I think at this time I don't think a cause is appropriate. While it's potential, I mean, I think he answered the questions correctly.

[PROSECUTOR]: Thank you for bringing it to our attention.

THE COURT: Yeah, thank you for bringing that up. Do you want to call the jurors back in, please?

(*Id.* at p. 65-66).

**{¶36}** The record reveals no error amounting to ineffective assistance in trial counsel's selection with respect to any of the jurors, particularly Juror 39. This court should not second-guess trial counsel's voir dire decisions and strategy. *Uncapher*, *supra,* at ¶ 46.

**{¶37}** Appellant also alleges her trial counsel rendered ineffective assistance in playing the video of M.A. speaking with the CPD on August 3, 2022 in an attempt to show some inconsistencies between that conversation and M.A.'s courtroom testimony as to when he went to Appellant's home for the first time. At the jury trial, M.A. began by saying he went to Appellant's home in March 2022. (7/19/2023 Jury Trial Tr., p. 71). In the video, M.A. said he went to Appellant's home in February 2022 for the same construction debris issue. (*Id.* at p. 93-121). That video was played over the State's objection.

**{¶38}** Appellant believes her trial counsel should have attacked the inconsistency. However, whether M.A. went to Appellant's residence for the first time in February 2022 or March 2022 is irrelevant as to the August 3, 2022 date of the assault. The playing of the video, and any follow-up questions thereafter, do not change the outcome in this case and do not amount to ineffective assistance. The playing of the video was part of trial strategy. *See State v. Fox*, 7th Dist. Noble No. 22 NO 0503, 2023-Ohio-4026, ¶ 46, citing

Case No. 23 MA 0092

*State v. Rivers,* 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 22 ("'Even instances of debatable strategy very rarely constitute ineffective assistance of counsel.'")

**{¶39}** Upon consideration, the record establishes trial counsel's representation was constitutionally effective and did not affect Appellant's rights. Counsel's performance was neither deficient nor prejudicial. Appellant fails to demonstrate ineffective assistance of counsel. *See Strickland, supra.*

**{¶40}** Appellant's third assignment of error is without merit.

## CONCLUSION

**{¶41}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The August 1, 2023 judgment of the Campbell Municipal Court convicting Appellant for assault and sentencing her to jail following a jury trial is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *State v. Carter*, 2024-Ohio-2130.]

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Campbell Municipal Court of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**