# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SPENCER B. KIDDER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0048**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 569

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, *Atty. Danielle Menning* and *Atty. Steven V. Yacovone*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. Rhys B. Cartwright-Jones*, for Defendant-Appellant.

Dated:  August 14, 2025

**HANNI, J.**

**{¶1}** Defendant-Appellant, Spencer B. Kidder, appeals from a Columbiana County Common Pleas Court judgment convicting him of four counts of rape and one count of gross sexual imposition, following a jury trial. Appellant raises four assignments of error. In his first two assignments of error, Appellant argues that the trial court committed plain error in admitting multiple witnesses' testimony regarding statements by others, which he asserts violated the Confrontation Clause and the hearsay rule. In his third assignment of error, Appellant asserts there was not sufficient evidence to support his convictions. In his final assignment of error, he asserts the failure to object to hearsay statements constituted ineffective assistance of counsel. Because none of Appellant's arguments have merit, his convictions are affirmed.

**{¶2}** The victim in this case is Appellant's biological son. The victim resided with his mother but would have overnight visits at Appellant's home on the weekends. According to the victim, during these visits Appellant would have the victim sleep naked in his bed with him. Appellant also consumed large amounts of alcohol when the victim was visiting. The victim said that starting when he was six or seven, Appellant would get in the bathtub with him and put his penis in the victim's anus. Appellant would also put his penis in the victim's mouth while they were in bed together. The victim would tell Appellant to stop, but Appellant would hit him and threatened the victim not to tell anyone what was happening. The victim stated that these things happened almost every time he visited Appellant. At first, because of his young age, the victim did not realize Appellant's behavior was wrong. But as he got older, he realized this was not normal father-son behavior.

**{¶3}** In 2020, when the victim was 12 years old, he began telling his mother he did not want to visit Appellant but did not explain why. Mother also noticed a change in the victim's demeanor at that time. The victim stopped visiting Appellant. The victim also started cutting his own arms. The victim began talking with his school guidance counselor and another counselor at that time. In 2021, the victim eventually disclosed to his counselor that his father had been sexually abusing him. He also told a family friend

about the abuse while they were playing a video game. The counselor called the victim's mother. Mother filed a police report and took the victim to Akron Children's Hospital. The victim underwent a medical examination and an interview at the Child Advocacy Center.

{¶4} On September 14, 2022, a Columbiana County Grand Jury indicted Appellant on four counts of rape (Counts 1 through 4), first-degree felonies in violation of R.C. 2907.02(A)(1)(B); two counts of sexual battery (Counts 5 and 6), second-degree felonies in violation of R.C. 2907.03(A)(5); and one count of gross sexual imposition (Count 7), a third-degree felony in violation of R.C. 2907.05(A)(4). Appellant pleaded not guilty.

{¶5} The matter proceeded to a jury trial on September 19, 2023. The jury heard testimony from numerous witnesses, including the victim and Appellant. It then found Appellant guilty as charged in the indictment. The trial court subsequently held a sentencing hearing. The court found that Counts 5 and 6 merged with Counts 1 and 2. It then sentenced Appellant to life in prison without parole on Counts 1 and 2, ten years to life on Counts 3 and 4, and 60 months on Count 7. It ordered the sentences on Counts 1 and 2 to run concurrently with each other, the sentences on Counts 3 and 4 to run concurrently with each other but consecutively to the sentences on Counts 1 and 2, and the sentence on Count 7 to run consecutively to the other sentences. The court also designated Appellant a Tier III sex offender.

{¶6} This Court granted Appellant's motion for leave to file a delayed appeal on January 2, 2025. He now raises four assignments of error for our review.

{¶7} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE SEXUAL ASSAULT EXAMINER TESTIMONY THAT WAS TRUTH-PROPENSITY TESTIMONY IN DISGUISE, IN VIOLATION OF EVID.R. 702 AND U.S. CONST. AMENDS. VI AND XIV.

{¶8} Monique Malmer is a nurse practitioner at Akron Children's Hospital Child Advocacy Center. She performed the medical examination of the victim after he disclosed the sexual abuse. She was qualified by the court as an expert in child sexual assault.

Case No. 24 CO 0048

**{¶9}** In this first assignment of error, Appellant asserts the trial court committed plain error in allowing Malmer's testimony as to the victim's credibility. He contends Malmer should not have testified to: her observations of the victim's behavior during the interview (Tr. 373); second-hand disclosures from the forensic interview that she did not conduct (Tr. 368-370); and a diagnosis of "highly concerning for sexual abuse" while conceding she did not find any physical evidence of sexual trauma (Tr. 380, 382). Appellant asserts the trial court specifically relied on this evidence in finding him guilty.[1]

**{¶10}** Appellant acknowledges his counsel did not raise an objection to this testimony during trial and, therefore, we are to apply a plain error review. Plain error should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983). Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

**{¶11}** Pursuant to Evid.R. 702, a witness may testify as an expert if (1) the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons, (2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony, and (3) the witness' testimony is based on reliable scientific, technical, or other specialized information.

**{¶12}** In this case, the trial court deemed Malmer an expert in child sexual assault. (Tr. 355). Thus, she was qualified to offer an expert opinion in this area.

**{¶13}** According to the Ohio Supreme Court, "an expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision," and is therefore admissible under Evid.R. 702. *State v. Stowers*, 81 Ohio St.3d 260, 262-263 (1998); *State v. Gersin*, 76 Ohio St.3d 491, 494 (1996); *State v. Boston*, 46 Ohio St.3d 108, 129 (1989).

**{¶14}** This Court summarized the principles to apply to in cases such as these in *State v. Culler*, 2021-Ohio-4642, ¶ 23-25 (7th Dist.):

The Eleventh Appellate District has aptly explained this area of the law:

[1] It should be noted, in his brief Appellant refers several times to his trial being a bench trial and the evidence that the "trial court" relied on in finding him guilty. This is not accurate. Appellant's case was tried to a jury and we have no way of knowing what evidence the jury relied on in finding him guilty.

Case No. 24 CO 0048

In *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), the Ohio Supreme Court held that "an expert's opinion testimony on whether there was *sexual abuse* would aid the jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." (Emphasis added.) However, "[a]n expert may *not* testify as to the expert's opinion of the *veracity of the statements of a child* declarant" who claims she has been raped. (Emphasis added.). *Id*. at syllabus. In *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998), the Supreme Court clarified its syllabus in *Boston*, and held "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with the behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." *Stowers* at 261, 690 N.E.2d 881. " 'Most jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse.' " *Id.* at 262, 690 N.E.2d 881, quoting *Boston* at 128, 545 N.E.2d 1220. Such expert testimony is permitted "to counterbalance the trier of fact's natural tendency to assess * * * delayed disclosure as weighing against the believability and truthfulness of the witness." *Stowers* at 263, 690 N.E.2d 881.

*State v. Ross*, 2018-Ohio-452, 105 N.E.3d 355, ¶ 49 (11th Dist.).

We have previously found that a physician should not have been permitted to testify to his opinion that the child was a victim of sexual abuse where his opinion was based solely on the child's narrative as this was essentially an opinion on the child's credibility. *State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405, ¶ 98-100, citing *State v. Schewirey*, 7th Dist. Mahoning No. 05 MA 155, 2006-Ohio-7054, ¶ 50-51 ("When an expert bases their diagnosis on nothing more than what the child tells them, then their 'diagnosis' is nothing more than an opinion on the child's veracity.").

In rendering that holding, we recognized that "an expert does not need physical findings to reach a diagnosis. If the expert relies on other facts in addition to the child's statements, then the expert's opinion will not be an improper statement on the child's veracity." *Id.*, citing *Schewirey* at ¶ 50 (such as where the child acts in a certain manner).

In considering our *Schewirey* decision, the Sixth Appellate District explained:

> Therefore, an expert in child sexual abuse can testify as to his or her opinion on whether the child was abused, but the expert may not testify as to the veracity of the child's statements. A difficulty arises, however, where the expert bases his or her opinion that a child was sexually abused solely on the child's statements. In those cases, the expert's " 'diagnosis' is nothing more than an opinion on the child's veracity." *State v. Schewirey*, 7th Dist. Mahoning No. 05 MA 155, 2006-Ohio-7054, 2006 WL 3849292, ¶ 50. Thus, for the expert's opinion to be admissible, " 'there simply has to be something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion. This would obviously include physical evidence, but could also involve the expert's observations of the child's demeanor or other indicators tending to show the presence of sexual abuse.' " *Id.* at ¶ 48, quoting with approval *State v. Plymale*, 11th Dist. Portage No. 99-P-0012, 2001 WL 1388424 (Nov. 2, 2001) (Christley, J., dissenting).

*State v. Coleman*, 2016-Ohio-7335, 72 N.E.3d 1086, ¶ 27-29 (6th Dist.).

*Culler*, 2021-Ohio-4642, ¶ 23-25 (7th Dist.).

{¶15} Thus, in considering Malmer's testimony, we must look at whether she based her opinion on other observations or indicators of sexual abuse and did not simply rely on the victim's statements.

{¶16} Malmer testified that when the interview began, the victim appeared comfortable talking with the social worker about general subjects. (Tr. 373). But when the social worker began asking about the sexual assault, the victim's hands became tense and he was squeezing his fingers. (Tr. 373). Malmer stated this was a coping mechanism. (Tr. 373). She further observed that the victim said "no" to certain questions, clarified items, and corrected the social worker when she said something incorrect, all of which elicited more experiential details that supported her diagnosis of "concerning for sexual assault." (Tr. 374). She noted that the victim was able to describe going upstairs at Appellant's house and going into the bathroom when Appellant would come in. (Tr. 374). He was also able to describe the "back and forth" motion that Appellant used and where he would ejaculate. (Tr. 374). Malmer next testified that the victim relayed that Appellant threatened to harm him if he told anyone what was happening. (Tr. 377). She stated this is a common reason for a delayed disclosure. (Tr. 377). Finally, Malmer noted that the victim had been cutting himself on his arms. (Tr. 382). The victim stated that he cut himself when he felt stressed. (Tr. 382). Malmer stated that cutting can be a coping mechanism for children who are abused. (Tr. 363-364).

{¶17} At the conclusion of observing the victim's interview, Malmer conducted a head-to-toe medical exam of the victim. (Tr. 379). She did not find any physical evidence of sexual trauma, but that was not surprising to her. (Tr. 380). Malmer explained that the abuse was not recent and even if the abuse had been recent, anal tissue can expand and it heals quickly. (Tr. 380-381). She testified that in most cases of sexual assault, there are no physical findings. (Tr. 368). Malmer then testified that given all of the above, she rendered a medical diagnosis of "highly concerning for sexual abuse." (Tr. 383).

{¶18} Malmer's testimony and her diagnosis of "highly concerning for sexual abuse" fit within the parameters established by the above-cited case law as permissible testimony. At no point did Malmer testify as to the victim's credibility or propensity for truthfulness. Instead she relied on numerous observations in reaching her diagnosis including: the physical signs of tension the victim displayed when asked about the sexual assaults; answering "no" to certain questions, clarifying items, and correcting the social worker when she said something incorrect; explaining experiential details of the assaults;

Case No. 24 CO 0048

threats to the victim being a common reason for delayed disclosure; and the victim's self-harm in the way of cutting, which is frequently a sign of abuse.

**{¶19}** Thus, Malmer's diagnosis was not based solely on the victim's narrative but on many other observations as well. Likewise, there was no error, plain or otherwise, in admitting Malmer's testimony regarding her observations of the victim and her medical diagnosis.

**{¶20}** Accordingly, Appellant's first assignment of error is without merit and is overruled.

**{¶21}** Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE LAY RECAPITULATIONS OF A CHILD WITNESS'S NARRATIVE IN VIOLATION OF THE GENERAL PROHIBITION AGAINST HEARSAY AND AGAINST THE CONFRONTATION CLAUSES OF U.S. CONST. AMENDS. VI AND XIV.

**{¶22}** Here, Appellant argues virtually every component of the State's case was introduced through third-party witnesses constituting violations of the Confrontation Clause and the hearsay rule.

**{¶23}** The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness (unless that witness is unavailable to testify and the defendant had a prior opportunity for cross-examination). *State v. Grabe*, 2017-Ohio-1017, ¶ 20 (7th Dist.), citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004).

**{¶24}** In this case, the victim took the stand, testified, and was available for cross-examination. So any statements as to what he may have told others do not raise a Confrontation Clause violation as the victim was a testifying witness. Likewise, the victim's mother was also a testifying witness. And the victim's counselor, Megan Miller Murphy, also testified. So any statements as to what they may have told other people do not raise Confrontation Clause violations.

**{¶25}** "Also, the Confrontation Clause is not implicated when the testimony is not hearsay." *State v. Culler*, 2021-Ohio-4642, ¶ 38 (7th Dist.), citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Tennessee v. Street*, 471 U.S. 409, 414 (1985);

Case No. 24 CO 0048

*State v. Maxwell*, 2014-Ohio-1019, ¶ 131. As discussed below, the remaining testimony did not qualify as hearsay. Therefore, it did not raise Confrontation Clause issues.

**{¶26}** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible at trial. Evid.R. 802.

**{¶27}** Once again, Appellant acknowledges his counsel did not raise an objection to this testimony during trial and, therefore, we are to apply a plain error review.

**{¶28}** We will address each witness Appellant takes issue with in turn.

**{¶29}** First, Appellant points us to testimony by Wellsville Police Lieutenant Marsha Eisenhart. Specifically, he takes issue with her statement recounting what Officer Doug Filippi and the victim's mother told her. (Tr. 197-198). And he takes issue with her statement that someone from the children's services agency stated that the case was substantiated. (Tr. 203).

**{¶30}** Lt. Eisenhart testified regarding her investigation in this matter. She stated that she was off-duty when she was initially contacted by Officer Filippi who told her that the victim's mother was at the police station reporting that her son had been sexually assaulted by his father. (Tr. 197). She instructed the officer to have the mother take her son to Akron Children's Hospital. (Tr. 197). Lt. Eisenhart stated that she assumed responsibility for the investigation in this matter the next day. (Tr. 197-198). As part of her investigation, Lt. Eisenhart reviewed the report prepared by Officer Filippi. (Tr. 198). The report identified Appellant as the perpetrator. (Tr. 198). The lieutenant continued to testify regarding the steps in her investigation, describing the people she contacted and the statements she reviewed. (Tr. 198-203). She then testified that a children services' case worker addressed the agency's concerns, "substantiated" the case, and then closed the case. (Tr. 203).

**{¶31}** There were no objections to this testimony. However, even if there were, any objections would have been overruled. While the lieutenant's testimony contained several out of court statements, they were not offered to prove the truth of the allegations. Rather, they were used to show background information and to describe how the lieutenant's investigation proceeded. *See State v. Bound*, 2004-Ohio-6530, ¶ 34 (5th Dist.) (information officer discovered as a result of his conversation with witness was

merely part of his criminal investigation and not hearsay). "[I]t is well-settled that statements offered by police officers to explain their conduct while investigating a crime are not hearsay because they are not offered for their truth, but rather, are offered as an explanation of the process of investigation." *State v. Warren*, 2004-Ohio-5599, ¶ 46 (8th Dist.), citing *State v. Price*, 80 Ohio App.3d 108, 110 (9th Dist. 1992); *State v. Braxton*, 102 Ohio App.3d 28, 49 (8th Dist. 1995); *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist. 1987).

**{¶32}** Thus, there was no plain error in admitting Lt. Eisenhart's testimony.

**{¶33}** Second, Appellant takes issue with a statement by the victim's mother as to what the victim had disclosed to his counselor, Megan Miller Murphy. (Tr. 231).

**{¶34}** The victim's mother was testifying about how she learned of her son's abuse. She stated that the victim had been talking with Murphy while he was at school. (Tr. 230-231). She testified that Murphy called her at work and asked her to come pick up the victim because he had just disclosed to her that he was being sexually abused by Appellant. (Tr. 231). She went and picked the victim up from school. (Tr. 231). She stated the victim got right into the car but he did not want to talk with her about what he had just disclosed. (Tr. 232). The victim's mother said the victim was not comfortable talking to her about any of the details of what happened. (Tr. 232). She described the actions she took including calling Appellant, reporting to the police, taking the victim to Akron Children's Hospital, and taking the victim to the Child Advocacy Center for an interview. (Tr. 232-234).

**{¶35}** "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980); *see also State v. Lucas*, 1996 WL 495579 (7th Dist. Aug. 29, 1996). The mother's statements as to what Murphy told her were properly admissible here. Once the mother learned about the abuse from the counselor, this set in motion the events leading up to this case. The mother described the actions she took upon learning of this information from calling Appellant to confront him to filing a police report to then seeking treatment for her son. Thus, there was no plain error in admitting the mother's testimony as to what the victim had disclosed to his counselor.

**{¶36}** Third, Appellant takes issue with testimony by school guidance counselor Anne Eisenhart about what the victim's mother told her after Ms. Eisenhart called to tell mother that the victim had cuts on his arms. (Tr. 251). Ms. Eisenhart testified that when she called the victim's mother to let her know about the cuts on the victim's arms the victim's mother told Ms. Eisenhart that the victim had been sexually assaulted by his father. (Tr. 251).

**{¶37}** Appellant does not put this statement in context. Ms. Eisenhart began her testimony discussing her interactions with the victim over the years. (Tr. 246). She described a change in his demeanor in the sixth grade and when she would meet with him. (Tr. 247). Ms. Eisenhart explained that as a school guidance counselor she was very busy so she contacted the victim's mother and received permission to arrange for Murphy to meet with the victim at school for counseling services. (Tr. 249-250). Then came Ms. Eisenhart's testimony as to the cuts on the victim's arm and the mother's response to her about Appellant abusing him. (Tr. 251). Ms. Eisenhart testified as to what steps she took next regarding contacting the victim's teachers per the mother's request and contacting Murphy. (Tr. 252).

**{¶38}** Once again, this testimony was admissible as it was offered to explain Ms. Eisenhart's role and her actions in this matter. *Thomas*, 61 Ohio St.2d at 232; *Lucas*, 1996 WL 495579 (7th Dist. Aug. 29, 1996). Thus, there was no plain error in admitting it.

**{¶39}** Fourth, Appellant takes issue with a statement by the victim's cousin about what the victim told their mutual friend. (Tr. 266-268).

**{¶40}** The victim's cousin testified that he and the victim were helping his uncle move when the victim rolled up his sleeves and the cousin noticed cuts on the victim's wrists. (Tr. 266). The cousin told the victim's mother about seeing the cuts. (Tr. 267). The cousin then began "looking into" the situation and learned from a mutual friend "about the stuff" that was going on. (Tr. 267-268). The cousin did not elaborate at all about what "the stuff" was or testify any further on the matter.

**{¶41}** There is no hearsay issue with this testimony. The cousin's testimony about the cuts on the victim's wrists were from his own observations. And his testimony that he learned about the "stuff" that was going on was very vague. The cousin did not provide any further testimony or details about what the mutual friend may have told him.

**{¶42}** Finally, Appellant takes issue with a statement by the victim's family friend about what the victim told him regarding the abuse. (Tr. 275-277).

**{¶43}** The friend testified that he and the victim frequently played video games together via an Xbox gaming system. (Tr. 272). While they played, they were able to chat with each other using their headsets. (Tr. 275). The friend testified that in the fall of 2021, while they were playing, the victim made some "very out of character" comments and jokes. (Tr. 274-275). The friend asked the victim what made him say these things. (Tr. 275). The victim started bawling and then the victim told the friend that his dad "touches him", "stuck it in his ass", and engaged in oral sex with him since he was six years old. (Tr. 275-276). The friend said the victim was "crying his eyes out" when he told him of the abuse. (Tr. 275).

**{¶44}** The State argues that this statement was admissible under the excited utterance exception to the hearsay rule.

**{¶45}** An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). For a statement to qualify as an excited utterance it must meet four requirements: "(1) a startling event, (2) a statement relating to that event, (3) a statement made by a declarant with firsthand knowledge, and (4) a statement made while the declarant was under the stress of the excitement caused by the event." *State v. Dean*, 2015-Ohio-4347, ¶ 123.

**{¶46}** The first three requirements are easily met here: (1) sexual assault is a startling event; (2) the victim's statement here related to the event; and (3) the victim clearly had first-hand knowledge. The only question arises with the fourth requirement.

**{¶47}** The victim made the statement to his friend in the fall of 2021 that Appellant had abused him. But the victim had not visited with Appellant since the fall of 2020. So the statement that he made to his friend was, at the least, a year after the last instance of abuse. It could be difficult to conclude that the statement was made while the victim was under the stress of the excitement caused by the event. However, "[t]here is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance." *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993).

**{¶48}** In cases of statements made by children who say they were sexually assaulted, the Ohio Supreme Court has upheld the admission of those statements even when made after a substantial lapse of time, recognizing that children are likely to remain in a state of nervous excitement longer than would an adult. *Id.* at 304. The Court pointed out: "This trend of liberalizing the requirements for an excited utterance when applied to young children who are the victims of sexual assault is also based on the recognition of their limited reflective powers. Inability to fully reflect makes it likely that the statements are trustworthy." *Id*.

**{¶49}** Applying the excited utterance exception to a case where a child sexual assault victim disclosed the abuse two years after it began, this Court noted:

> " 'A reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances.' " *State v. Robinson*, 12th Dist. No. CA2015-01-013, 48 N.E.3d 109, 2015-Ohio-4533, ¶ 29, quoting *State v. Ashcraft*, 12th Dist. No. CA97-11-217 (Sept. 28, 1998), citing *State v. Wagner*, 30 Ohio App.3d 261, 263, 508 N.E.2d 164 (8th Dist.1986). "[W]hen the crime is rape, determining whether the victim is in an excited state is a factual question that is left to the trial court's discretion." *Ashcraft*, citing *State v. Smith*, 34 Ohio App.3d 180, 190, 517 N.E.2d 933 (5th Dist.1986).

*State v. Palmer*, 2022-Ohio-2643, ¶ 17 (7th Dist.).

**{¶50}** Thus, the friend's testimony as to what the victim disclosed to him in the case could have been admitted as an excited utterance. However, even if these statements did not rise to the level of an excited utterance, there was no plain error here. In other words, even if this testimony had been excluded, the outcome of the trial would not have been different. In addition to the evidence discussed in this assignment of error, the victim gave extensive testimony against Appellant.

**{¶51}** Accordingly, Appellant's second assignment of error is without merit and is overruled.

**{¶52}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION IN THE FACE OF INSUFFICIENT EVIDENCE IN VIOLATION OF U.S. CONST. AMENDS. VI AND XIV.

**{¶53}** Appellant contends here that when the alleged improperly-admitted evidence (as he discussed in previous assignments of error) is not considered, there was not sufficient evidence on which to convict him. He asserts the victim was not credible and the State failed to establish the dates when the offenses were alleged to have occurred.

**{¶54}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶55}** A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id*. at ¶ 82.

**{¶56}** The jury convicted Appellant of four counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender . . . when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶57}** The jury also convicted Appellant of two counts of sexual battery in violation of R.C. 2907.03(A)(5), which provides: "No person shall engage in sexual activity with another; cause another to engage in sexual activity with the offender . . when . . . [t]he

offender is the other person's . . . natural or adoptive parent[.]"

{¶58} Finally, the jury convicted Appellant of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender . . . when . . . [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶59} Appellant claims that without the alleged improperly-admitted evidence, there was not sufficient evidence on which to convict him. But even if we did not consider any other witness's testimony, the victim's testimony alone provided sufficient evidence on which to convict Appellant.

{¶60} The victim testified that starting when he was six or seven years old he would spend weekends at Appellant's house. (Tr. 338-339). He stated that when he would stay at Appellant's house, Appellant made the victim sleep naked in bed with him. (Tr. 339). The victim stated that Appellant would drink alcohol often while he was there and would offer the alcohol to him. (Tr. 340-341). The victim testified that during his visits with Appellant, Appellant would touch his penis and his butt. (Tr. 342). He stated that Appellant would bathe with him. (Tr. 342). During these baths, Appellant would put his penis in the victim's butt. (Tr. 342). The victim described the motions Appellant would make and his ejaculation. (Tr. 343). He relayed that this happened almost every time he visited Appellant. (Tr. 343-344). The victim said Appellant's abuse made him feel weak, uncomfortable, and caused him physical pain. (Tr. 344). When he would tell Appellant to stop, Appellant would hit him. (Tr. 344). The victim further testified that Appellant put his penis in the victim's mouth when they were in bed together. (Tr. 344-345). Appellant threatened the victim that if he told anyone what was happening he would make his punishments worse or kill him. (Tr. 345-346). The victim testified he was afraid. (Tr. 346).

{¶61} The victim testified that he was very young when the abuse started and he did not realize at the time that it was wrong. (Tr. 346). As he grew older, the victim realized this was not what fathers did with their sons. (Tr. 346). When he was in the sixth grade, the victim began telling his mother that he did not want to visit with Appellant. (Tr. 347). The last time he visited with Appellant was sometime during his sixth grade year

when he was 12 years old. (Tr. 347). The victim also testified that he began cutting his arms because he was stressed about going to visit Appellant. (Tr. 348).

{¶62} In addition to his testimony, the victim's interview at the Child Advocacy Center was also played for the jury. (Tr. 372; State's Ex. 17). In his interview, the victim gave the same facts about the abuse that he testified to.

{¶63} The victim provided testimony sufficient to convict Appellant on each of the charges. In a sufficiency of the evidence challenge, we do not weigh the witnesses' credibility. *Yarbrough*, 2002-Ohio-2126, at ¶ 79. Instead, this Court looks at whether the evidence, if believed, is sufficient. *Id*. at ¶ 82. If the victim's testimony is believed, it alone was sufficient to convict Appellant.

{¶64} Appellant also asserts the State failed to establish the dates when the offenses were alleged to have occurred.

{¶65} As to the dates of the offenses, because specific dates and times are not elements of the offenses charged, indictments that charge sexual offenses against children do not need to specify the exact date of the alleged abuse if the State establishes that the offenses were committed within the time frame alleged. *State v. Palmer*, 2021-Ohio-4639, ¶ 19 (7th Dist.). Additionally, there is no issue with the provision of a date range where the rape victim is a child, especially when the victim lives with the perpetrator. *State v. Miller*, 2018-Ohio-3430, ¶ 23 (7th Dist.).

{¶66} At the time of trial (September 2024), the victim stated that he was 15 years old and was born in 2008. (Tr. 335). He testified that the abuse began when he was six or seven years old and continued until he was 12 years old. (Tr. 338, 347). Thus, the evidence demonstrated that the offenses occurred beginning in 2014 or 2015 and continued until 2020. This date range was sufficient as to when the offenses occurred.

{¶67} Thus, the jury's verdict was supported by sufficient evidence.

{¶68} Accordingly, Appellant's third assignment of error is without merit and is overruled.

{¶69} Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION FROM PROCEEDINGS INFECTED WITH INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶70} In his final assignment of error, Appellant claims his trial counsel was ineffective for failing to object to the evidence set out in his first and second assignments of error. He claims the State's case lacked forensic support and the timeline of the alleged abuse was vague. Thus, Appellant argues that had his counsel objected to the above-cited evidence, he would not have been convicted.

{¶71} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id*. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus.

{¶72} Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999). In Ohio, a licensed attorney is presumed competent. *Id*.

{¶73} As discussed in Appellant's first and second assignments of error, the evidence that Appellant claims his counsel should have objected to was admissible evidence and was not in violation of the Confrontation Clause or the hearsay rule. Therefore, it is difficult to suggest that failing to object to this evidence constituted deficient performance. Moreover, the testimony provided by the victim and by way of his interview weighed heavily against Appellant. Thus, we cannot find resulting prejudice here.

{¶74} Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

{¶75} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Dickey, J., concurs.

Case No. 24 CO 0048

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**